**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**

**MARSHALL DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA, EX. REL., STEVEN BRICE WIBRACHT, AND STEVEN BRICE WIBRACHT, INDIVIDUALLY, AND/OR THROUGH JOSE C. RODRIGUEZ AS TRUSTEE OF THE BANKRUPTCY ESTATE OF STEVEN BRICE WIBRACHT AND ERIN MICHELLE WIBRACHT,** | ) ) ) ) ) ) ) ) ) **Civil Action No. 2:21-cv-00125** ) **Assigned to: The Honorable J. Rodney Gilstrap** ) |
| **Plaintiffs,** | ) **HEARING REQUESTED** ) |
| **v.** | ) ) |
| **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, et al.** | ) ) ) ) |
| **Defendants.** | ) |

**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA'S**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**
**AND MEMORANDUM IN SUPPORT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    NATURE AND STAGE OF PROCEEDINGS ..................................................1

II.   INTRODUCTION .........................................................................................1

III.  SUMMARY OF ARGUMENTS .....................................................................2

IV.   STATEMENT OF THE ISSUES....................................................................5

V.    ARGUMENT ..................................................................................................6

    A.    STANDARDS OF REVIEW ...............................................................6

        1.    The Application of Rule 12(b)(6) to Travelers' Motion............................6

        2.    The Application of Rule 9(b) to Travelers' Motion..................................7

        3.    The Application of the Standing Doctrine to Travelers' Motion................7

    B.    THE PUBLIC DISCLOSURE BAR COMPELS DISMISSAL OF THE SECOND AMENDED COMPLAINT ................................................8

        1.    Relator's Original Complaint Was Based Upon Public Disclosures ..........9

        2.    Steven Wibracht Is Not An Original Source...............................................12

    C.    THE SECOND AMENDED COMPLAINT FAILS TO PROPERLY ALLEGE EITHER A DIRECT OR INDIRECT FALSE PRESENTMENT, OR FALSE STATEMENT CLAIM AGAINST TRAVELERS ........................14

        1.    Relator Failed Adequately to Plead That Travelers Submitted or Caused the Submission of a False Claim under §3729(a)(1)(A) ..............15

        2.    Relator Failed Adequately to Plead That Travelers Submitted or Caused the Submission of a False Statement or Record under §3729(a)(1)(B) ..................16

        3.    Relator Failed Adequately to Plead That Travelers Possessed The *Scienter* Necessary To Establish A Cognizable FCA Claim ....................17

    D.    THE CONSPIRACY CAUSES OF ACTION AGAINST TRAVELERS SHOULD BE DISMISSED ................................................20

    E.    STEVEN WIBRACHT LACKS STANDING TO PURSUE FCA CLAIMS AGAINST TRAVELERS................................................21

    F.    STEVEN WIBRACHT IS JUDICIALLY ESTOPPED FROM PURSUING THE FCA CLAIMS AGAINST TRAVELERS ................................................22

    G.    FALSE CLAIMS ACCRUING PRIOR TO APRIL 3, 2015 ARE BARRED BY THE STATUTES OF LIMITATION................................................26

    H.    THE CLAIMS AGAINST TRAVELERS ARE CONTRARY TO PUBLIC POLICY ................................................27

VI.   CONCLUSION................................................30

i

TABLE OF AUTHORITIES

**Cases**

*Anderson v. Wells Fargo Bank, N.A.,*
  953 F.3d 311, 341 (5th Cir. 2020) ........................................................................ 7

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................. 6

*Cochise Consultancy, Inc., v. United States ex rel. Hunt,*
  139 S. Ct. 1507, 1510-11, 1513 (2019) ................................................................. 26

*Davis v. Fiat Chrysler Auto. U.S., LLC,*
  747 Fed. Appx. 309, 314-35 (6th Cir. Aug. 22, 2018) ......................................... 24

*Doe v. Dow Chem. Co.,*
  343 F.3d 325, 328 (5th Cir. 2003) ....................................................................... 7

*Doe v. Linam,*
  225 F. Supp. 2d 731, 734 (S.D. Tex. 2002) ......................................................... 27

*Ferrer v. Chevron Corp.,*
  484 F.3d 776, 780 (5th Cir. 2007) ....................................................................... 6

*Funk v. Stryker Corp.,*
  631 F.3d 777, 782 (5th Cir. 2011) ....................................................................... 6

*Harold H. Huggins Realty, Inc. v. FNC, Inc.,*
  634 F.3d 787, 795 n.2 (5th Cir. 2011) ................................................................. 8

*Herron v. Herron,*
  255 F.2d 589, 593 (5th Cir. 1958) ....................................................................... 27

*In re Griffin,*
  330 B.R. 737, 740 (W.D. Ark. 2005) ................................................................... 22

*In re Katrina Canal Breaches Litig.,*
  495 F.3d 191, 205 (5th Cir. 2007) ....................................................................... 6

*In re Merrill Lynch & Co., Inc. Rsch. Rep.'s Sec. Litig.,*
  375 B.R. 719, 725-26 (S.D.N.Y. 2007) ............................................................... 22

*In re Minerals Cont'l Inc.,*
  No. CIV. A. H-12-03099, 2013 WL 1352223, at *2 (S.D. Tex. Apr. 2, 2013) ..... 7, 8

*In re Nat. Gas Royalties,*
  562 F.3d 1032, 1039 (10th Cir. 2009) ................................................................. 12

*In re Superior Crewboats, Inc.,*
  374 F.3d 330, 335 (5th Cir. 2004) .......................................................... 24, 25, 26

*In re Walker,*
  323 B.R. 188, 196 (S.D. Tex. 2005) .............................................................. 24, 26

*Kaiser Aluminum Chem. Sales, Inc. v. Avondale Shipyards, Inc.,*
  677 F.2d 1045, 1050 (5th Cir. 1982) ................................................................... 27

*Little v. Shell Exploration & Prod. Co.,*
  690 F.3d 282 (5th Cir. 2012) ............................................................................... 8

*Maxum Enters. LLC v. Auto. Fleet Enters., Inc.,*
  No. 3:18-CV-0687-B, 2019 WL 1493164, at *5 (N.D. Tex. Apr. 4, 2019) ........... 19

*McClure v. Ashcroft,*
  335 F.3d 404, 408 (5th Cir. 2003) ....................................................................... 7

*Raines v. Byrd*,
  521 U.S. 811, 80 (1997)...........................................................................................7
*Reed v. City of Arlington*,
  650 F.3d 571, 574 (5th Cir. 2011) .......................................................................23
*Roden v. Synergy Techns., Inc.*,
  525 B.R. 620, 628 (W.D. La. 2015)......................................................................24
*Scollick ex rel. U.S. v. Narula, et al.*,
  No. 1:14-cv-01339-RCL, 2022 WL 3020936, at *17 (D.D.C. July 29, 2022) ... 2, 14, 18, 19, 30
*Smith v. Sanders*, No.
  3:12-CV-4377-M, 2015 WL 5768532, at *5 (N.D. Tex. Sept. 4, 2015) ................20
*Smith v. United States*,
  287 F.2d 299, 304 (5th Cir. 1961) .......................................................................26
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308, 322 (2007)........................................................................................6
*Tuchman v. DSC Commc'ns Corp.*,
  14 F.3d 1061, 1068 (5th Cir. 1994) .......................................................................7
*U.S. ex rel McLain v. Fluor Enters., Inc.*,
  681 Fed. Appx. 355, 359 (5th Cir. 2017)..............................................................17
*U.S. ex rel Solomon v. Lockheed Martin Corp.*,
  878 F.3d 139, 145 (5th Cir. 2017) ...........................................................9, 12, 15
*U.S. ex rel. Colquitt v. Abbott Labs*,
  858 F.3d 365, 371 (5th Cir. 2017) .........................................................................7
*U.S. ex rel. Dekort v. Integrated Coast Guard Sys.*,
  705 F. Supp. 2d 519, 548 (N.D. Tex. 2010) ...................................................20, 21
*U.S. ex rel. Farmer v. City of Houston*,
  523 F.3d 333, 343 (5th Cir. 2008) .......................................................................20
*U.S. ex rel. Frey v. Health Mgmt. Sys., Inc.*,
  No. 4:21-CV-02024, 2023 WL 2563239, at *7–8 (S.D. Tex. Feb. 10, 2023) ........16
*U.S. ex rel. Fried v. W. Indep. Sch. Dist.*,
  527 F.3d 439, 442 (5th Cir. 2008) .........................................................................9
*U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009) ................7, 20
*U.S. ex rel. Integra Med Analytics, LLC v. Creative Sols. in Healthcare, Inc.*,
  No. SA-17-CV-1249-XR, 2019 WL 5970283, at *10 (W.D. Tex. Nov. 13, 2019)...................8
*U.S. ex rel. Schutte v. SuperValu Inc.*, 143 S. Ct. 1391, 1404 (2023) .........................17
*U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*,
  14 F.3d 645, 655 (D.C. Cir. 1994)....................................................................9, 12
*U.S. ex rel. Bias v. Tangipahoa Parish Sch. Bd.*,
  766 Fed. Appx. 38, 43 (5th Cir. Mar. 22, 2019) ................................................24
*U.S. ex rel. Gebert v. Transp. Admin. Servs.*,
  260 F.3d 909, 917 (8th Cir. 2001) .......................................................................23
*U.S. ex rel. Hendrickson v. Bank of Am., N.A.*,
  779 F. App'x. 250, 252 (5th Cir. 2019) ..................................................................8
*U.S. ex rel. Jamison v. McKesson Corp.*,
  649 F.3d 322, 327 (5th Cir. 2011) ...........................................................8, 9, 11, 12
*U.S. ex rel. Long v. GSDMIdea City, L.L.C.*,
  798 F.3d 265, 271 (5th Cir. 2015) .......................................................................23

*U.S. ex rel. Spicer v. Westbrook*,
  751 F.3d 354, 361-64 (2014) ........................................................................ 21, 24
*Warth v. Seldin*,
  422 U.S. 490, 498 (1975) ...................................................................................... 7
*Wieburg v. GTE Sw. Inc.*,
  272 F.3d 302, 306 (5th Cir. 2001) ...................................................................... 21

**Statutes**

15 U.S.C. § 631(a) ................................................................................................ 28
31 U.S.C. § 3729 ....................................................................................... 1, 15, 17
31 U.S.C. § 3730(4)(A)(i) ..................................................................................... 13
31 U.S.C. § 3730(e)(4)(A) ...................................................................................... 8
31 U.S.C. § 3730(e)(4)(A). ............................................................................... 8, 12
31 U.S.C. § 3730(e)(4)(B) ............................................................................ 9, 12, 13
31 U.S.C. § 3731(b) ............................................................................................. 26
31 U.S.C. § 3731(b)(1) .............................................................................. 5, 27, 28
31 U.S.C. § 3731(b)(2) .............................................................................. 5, 26, 27
40 U.S.C. § 3131 ................................................................................................. 28

**Regulations**

48 C.F.R. § 28.102 (2023) ............................................................................... 2, 28

Defendant Travelers Casualty and Surety Company of America ("Travelers"), by counsel and pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), respectfully submits this Motion to Dismiss the Second Amended Complaint as against Travelers and brief in support.

## I. NATURE AND STAGE OF PROCEEDINGS

Relator[1] has filed three complaints under seal asserting claims pursuant to the False Claims Act, 31 U.S.C. § 3729 et seq. ("FCA") against Michael Padron, Travelers, Time Insurance Agency a/k/a Statewide Surety ("Time") and John W. Schuler. ECF 1, 16, 60. The government has now elected three times not to intervene in the FCA claims against Travelers and to intervene only with respect to the FCA claims against Defendant Michael Padron. ECF 17, 34, 66. The Court unsealed the original Complaint on March 20, 2023, and Relator's First and Second Amended Complaints on August 2, 2023. ECF 23, 69. Travelers now moves to dismiss the claims against it set forth in the operative Second Amended Complaint.

## II. INTRODUCTION

Travelers and Steven Wibracht have a long, tumultuous relationship – though it did not begin that way. For years, Steven Wibracht had no objection to the hundreds of millions of dollars in surety bonds that Travelers issued to his benefit and the benefit of the companies for which he worked and/or owned. The relationship soured, however, when Steven Wibracht, his brother Michael Wibracht (now a convicted felon), Defendant Michael Padron (now a convicted felon), and several other co-indemnitors sought to avoid liability to Travelers under a 2008 General Agreement of Indemnity.[2] Travelers incurred more than $20 million in losses in connection with

---

[1] As used herein, the plaintiffs/relators shall be referred to by the singular "Relator." As discussed in Section V. E., there is only one plaintiff/relator with standing to pursue the instant action, *i.e.*, Relator Jose Rodriguez, as trustee of the bankruptcy estate of Steven and Erin Wibracht.

[2] *Travelers Casualty and Surety Company of America v. Michael Padron, et al.*, Case No. 5:15-cv-00200-DAE, in the United States District Court for the Western District of Texas.

1

the surety bonds issued on behalf of Steven Wibracht and his co-indemnitors. It is Travelers'
efforts to recover those losses from Steven Wibracht that appears to have spurred this meritless
and retaliatory action against Travelers.[3]

This is not the first time that a *qui tam* relator has asserted legally insufficient False Claims
Act ("FCA") claims against a Miller Act surety[4] for allegedly failing to detect and report set-aside
procurement fraud. On July 19, 2022, in the first such action, the U.S. District Court for the District
of Columbia granted summary judgment dismissing FCA claims asserted against a group of Miller
Act sureties for acts allegedly committed by companies they bonded (*i.e.*, their bond "principals").
*See Scollick ex rel. U.S. v. Narula, et al.*, No. 1:14-cv-01339-RCL, 2022 WL 3020936, at *17
(D.D.C. July 29, 2022) ("*Scollick*").[5] Among key findings, the District Court in *Scollick* confirmed
that Miller Act sureties are *not* participants in federal set-aside programs and have *no duty* to
familiarize themselves with the regulations for those programs. *Id*. at *13. The District Court also
found that Miller Act sureties have *no duty* to double-check the government's verification of their
principal's set-aside program eligibility. *Id.* at *14. The Relator's allegations against Travelers in
the present action are the same types of allegations asserted and found legally deficient in *Scollick*
court.

## III.   SUMMARY OF ARGUMENTS

1.     The FCA imposes barriers against opportunistic or parasitic *qui tam* relators,

---

[3] *See Travelers Casualty and Surety Company of America v. Steven Brice Wibracht, et al.* (*In re Wibracht*), Case No. 17-52300-RBK, Adv. Proc. No. 18-05203-RBK, in the United States Bankruptcy Court for the Western District of Texas; *Travelers Casualty and Surety Company of America v. Steven Wibracht, et al*., Case No. 5:20-cv-01433-XR, in the United States District Court for the Western District of Texas.

[4] 40 U.S.C. § 3131, *et seq*., commonly known as the "Miller Act," as implemented by the Federal Acquisition Regulation (FAR), requires federal government construction projects over $150,000 to be guaranteed by payment and performance bonds. *See* 48 C.F.R. § 28.102-2. These bonds ensure that the government will get the construction services bargained for at the agreed-upon price and that all subcontractors and suppliers will be paid. The Miller Act is an integral part of the government's procurement of construction services, including through set-aside programs.

[5] Travelers was not a defendant in the *Scollick* case.

2

including those who assert claims derived from publicly disclosed allegations or transactions that the government could have pursued itself. *U.S. ex rel. Schweizer v. Canon, Inc.*, 9 F.4th 269, 271 (5th Cir. 2021). Here, the government was a party to multiple lawsuits that revealed *all* the essential elements of the alleged fraud necessary to put the government on notice of the so-called fraudulent "bonding scheme." Relator's allegations add nothing to the facts that were already in the public arena.  This, coupled with Steven Wibracht's candid admission that he had no role in obtaining bonds for the MAPCO/Padron entities and no involvement with the SBA or other independent knowledge of any facts concerning Travelers' bonding, is fatal to Relator's claims, and therefore the Second Amended Complaint fails to establish Steven Wibracht as the "original source" of any key allegations.

2. The Second Amended Complaint in this action is devoid of any allegation that Travelers submitted a false claim or statement to the government (*i.e.* Relator fails to plead a *direct presentment* cause of action against Travelers). Thus, the only way the Second Amended Complaint could state an FCA claim against Travelers would be to allege with sufficient particularity that Travelers "caused" a false claim or false statement to be submitted by the MAPCO/Padron entities. Simply alleging, as the Second Amended Complaint does, that Travelers bonded a set-aside contractor that submitted false certifications is insufficient as a matter of law.

3. Relator does not adequately allege that Travelers caused the submission of a false claim or false statement under an *indirect presentment* theory. The Second Amended Complaint fails to allege with particularity how Travelers, as a non-submitter, had actual knowledge of the falsity of any claim or statement submitted to the government. Beyond the general (though often repeated) allegation that Travelers "provided bonding" for the set-aside contracts, all of the specific allegations of wrongdoing or knowledge are attributed to co-defendants Michael Padron, Time or John Schuler.

3

4.      The Second Amended Complaint also fails to allege that Travelers possessed the requisite *scienter* under the FCA (*i.e.*, that Travelers *knowingly* made or caused to be made an actionable false statement or claim). Relator's allegations are insufficient to establish that any Travelers employee ever saw or had familiarity with the particulars of the applicable set-aside contract regulations such that they could appreciate whether a violation had occurred. In fact, Travelers owed no duty to the government to know the specific regulatory requirements of the Small Business Administration ("SBA") applicable to the particular set-aside programs at issue.

5.      Likewise, the Second Amended Complaint fails to adequately state a claim that Travelers was part of a conspiracy to violate the FCA. Specifically, Relator fails to allege any collaboration or unlawful agreement among Travelers and any of the other alleged co-conspirators. Simply alleging that Travelers provided a service, *i.e.* bonding, to an entity that submitted false claims or statements to the government is insufficient.

6.      Steven Wibracht should be dismissed as a plaintiff because he is not the real party in interest with standing to pursue the FCA claims against Travelers. Steven Wibracht is a debtor in a reopened Chapter 7 bankruptcy proceeding. On April 3, 2021, he amended his bankruptcy schedules to list the FCA claims against Travelers as an asset of his bankruptcy estate. Accordingly, the Bankruptcy Trustee, Relator Jose C. Rodriguez, stands in the shoes of the debtor, Steven Wibracht, and the Trustee is the party with *exclusive standing to pursue* the FCA claims. Moreover, pursuant to the doctrine of judicial estoppel, Steven Wibracht's failure to timely disclose the FCA claims against Travelers in his bankruptcy proceeding forecloses any potential expectation of recovery he might have as a result of this case.[6]

---

[6] Steven Wibracht's standing is limited to proceedings before the Bankruptcy Court. At most, Mr. Wibracht might have a *potential expectancy* to recover in the Bankruptcy Court after his obligations are satisfied by the Trustee in his bankruptcy case. However, even that is doubtful. *See Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011).

4

7.    The Second Amended Complaint also asserts claims barred as a matter of law under the FCA's statutes of limitation. Claims brought under § 3731(b)(1) must be brought within six years after the date on which the violation is committed. As this lawsuit was filed on April 5, 2021, each alleged false claim submitted before April 5, 2015 is barred by the statute of limitations. Even if Relator could rely upon the ten year period under § 3731(b)(2) for certain claims, under no circumstances can Relator pursue any alleged false claims submitted prior to April 5, 2011.

8.    Finally, Relator's allegations regarding Travelers' involvement in an improper "bonding scheme," are fundamentally at odds with well settled public policy. Contrary to Relator's pejorative description of Travelers' "bonding scheme," cross-indemnity from entities with greater financial strength to support set-aside contractors that otherwise may not qualify for set-aside contracts is not improper. This approach provides many small businesses access to bonding and contracts that otherwise would be unattainable. Allowing Relator to proceed with claims imposing duties upon Travelers or any Miller Act surety not contemplated by the federal statutory or regulatory scheme undermines public policy and will substantially reduces government contracting opportunities for small and disadvantaged businesses by driving sureties out of the market.

## IV.    STATEMENT OF THE ISSUES

1.    Whether the public disclosure bar precludes the claims against Travelers;

2.    Whether the Second Amended Complaint should be dismissed as against Travelers for failure to state a claim upon which relief can be granted and/or failure to plead fraud with particularity;

3.    Whether Steven Wibracht lacks standing to pursue the FCA claims against Travelers in addition to and/or independent of Relator Jose Rodriguez, as trustee of Steven Wibracht's bankruptcy estate;

4.    Whether Steven Wibracht is judicially estopped from asserting FCA claims against Travelers because of his failure timely to disclose his claims in the 2017 Bankruptcy; and

5.    Whether the FCA's statutes of limitation bar alleged false claims accruing prior to April 5, 2015 and/or April 5, 2011.

## V.    ARGUMENT

### A.    STANDARDS OF REVIEW

#### 1.    The Application of Rule 12(b)(6) to Travelers' Motion

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). But, "conclusory allegations, unwarranted factual inferences, or legal conclusions" are not accepted as true. *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

In deciding a Rule 12(b)(6) motion to dismiss, a court may consider certain materials outside the four corners of the complaint without converting the motion to dismiss into a motion for summary judgment. *See, e.g., Funk v. Stryker Corp.*, 631 F.3d 777, 782 (5th Cir. 2011) ("a district court 'must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Courts may take judicial notice of publicly available pleadings and other reliable information in the public domain. *See Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020); Fed. R. Evid. 201.

### 2.    The Application of Rule 9(b) to Travelers' Motion

Claims brought under the FCA must fulfill the pleading requirements of Rule 9(b). *Doe v. Dow Chem. Co.*, 343 F.3d 325, 328 (5th Cir. 2003). More precisely, in order to satisfy Rule 9(b), typically the complaint must set forth the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Id.* at 329. At the same time, the particularity demanded by Rule 9(b) necessarily differs with the facts of each case. *See Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067-68 (5th Cir. 1994). FCA presentment claims must include either the "'details of an actually submitted false claim'" or "'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *U.S. ex rel. Colquitt v. Abbott Labs*, 858 F.3d 365, 371 (5th Cir. 2017) (quoting *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)).

### 3.    The Application of the Standing Doctrine to Travelers' Motion

The question of standing is essentially "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). "The standing doctrine defines and limits the role of the judiciary and is a threshold inquiry to adjudication." *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003). The standing inquiry has "two components: constitutional limits, based on the case-and-controversy clause in Article III of the Constitution; and prudential limits, crafted by the courts." *Id.* (citing *Raines v. Byrd*, 521 U.S. 811, 820 (1997)).[7]

---

[7] *See also In re Minerals Cont'l Inc.*, No. CIV. A. H-12-03099, 2013 WL 1352223, at *2 (S.D. Tex. Apr. 2, 2013) ("Prudential standing, by contrast, … is a judicially-created doctrine concerning: … '(1) whether a plaintiff's grievance arguably falls within the zone of interests protected by the statutory provision invoked in the suit; (2) whether the complaint raises abstract questions or a generalized grievance more properly addressed by the legislative branch; and (3) whether the plaintiff is asserting his or her own legal rights and interest rather than the legal rights and interest of third parties.'").

*Qui tam* relators have constitutional standing. *Little v. Shell Exploration & Prod. Co*., 690 F.3d 282 (5th Cir. 2012). But a Chapter 7 debtor – like Steven Wibracht – does not have prudential standing to pursue claims belonging to the bankruptcy estate. *See Minerals Cont'l*, 2013 WL 1352223, at *2. A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted is the proper vehicle to challenge a relator's lack of prudential standing. *See Harold H. Huggins Realty, Inc. v. FNC, Inc*., 634 F.3d 787, 795 n.2 (5th Cir. 2011).

## B.     THE PUBLIC DISCLOSURE BAR COMPELS DISMISSAL OF THE SECOND AMENDED COMPLAINT

To prevent parasitic lawsuits, the public disclosure bar prohibits a *qui tam* relator from bringing an FCA lawsuit based on a fraud that has already been "publicly disclosed," unless the relator is an "original source" of the information. 31 U.S.C. § 3730(e)(4)(A). The Fifth Circuit "traditionally applies a 'three-part test, asking "1) whether there has been a 'public disclosure' of allegations or transactions, 2) whether the qui tam action is 'based upon' such publicly disclosed allegations, and 3) if so, whether the relator is the 'original source' of the information.'" *Schweizer*, 9 F.4th at 275 (quoting *U.S. ex rel. Jamison v. McKesson Corp*., 649 F.3d 322, 327 (5th Cir. 2011)).[8]  In applying this test, the Fifth Circuit has recognized that "combining the first two steps can be useful, because it allows the scope of the relators' action in step two to define the 'allegations or transactions' that must be publicly disclosed in step one." *Id.*[9]

If the essential elements of the claim are in the public domain such that the relator or the government could draw even an inference of the fraud, then a complaint alleging that fraud is

---

[8] Although the 2010 amendments to 31 U.S.C. § 3730(e)(4)(A) no longer include the "based upon" language, "the inquiry remains the same under the post-amendment language." *See U.S. ex rel. Integra Med Analytics, LLC v. Creative Sols. in Healthcare, Inc.*, No. SA-17-CV-1249-XR, 2019 WL 5970283, at *10 (W.D. Tex. Nov. 13, 2019). Events prior to the 2010 effective date of the amendments are still governed by the older version of the statute, while events occurring after that date are analyzed using the new version (*see U.S. ex rel. Hendrickson v. Bank of Am., N.A.*, 779 F. App'x. 250, 252 (5th Cir. 2019)). Nonetheless, the FCA's statutes of limitation which bar alleged violations that occurred before 2011, if not 2015, make the old standards irrelevant in this lawsuit.

[9] *See also U.S. ex rel. Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 442 (5th Cir. 2008) (combining the first two steps).

based upon public disclosures. *See U.S. ex rel Solomon v. Lockheed Martin Corp.*, 878 F.3d 139, 145-46 (5th Cir. 2017) (citing *U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 655 (D.C. Cir. 1994)). If the government "*could have* made the inference," regardless of how improbable such an inference would be, then the public disclosure bar compels dismissal of a complaint unless the relator is an original source. *Id.* at 146. In *Springfield Terminal*, the D.C. Circuit stressed that "a *qui tam* action cannot be sustained where both elements of the fraudulent transaction" are already public, even if the relator "comes forward with additional evidence incriminating the defendant." 14 F.3d at 655-56. Finally, to qualify as an "original source" under the FCA, a relator must "have knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and … voluntarily provide[] the information to the Government before filing an action." 31 U.S.C. § 3730(e)(4)(B).

1.    **Relator's Original Complaint Was Based Upon Public Disclosures**

In analyzing whether a *qui tam* complaint is based upon public disclosures, the Fifth Circuit compares the allegations contained in the *original* complaint with public disclosures available at the time the complaint was filed. *See Jamison*, 649 F.3d at 327. Combining the first two prongs, the questions are whether there has been a "public disclosure" of allegations or transactions, and, if so, whether the *qui tam* action is "based upon" such publicly disclosed allegations. *Id.* In the Fifth Circuit, "the publicly disclosed allegations or transactions need only be as broad and as detailed as those in the relator's complaint." *Id*.

This Motion presents public disclosure evidence that this Court may take judicial notice of and consider for purposes of this inquiry: (1) criminal proceedings of Defendant Padron (and two co-conspirators) involving the United States; (2) a Federal Grand Jury Subpoena to Travelers stemming from a government investigation; and (3) news media accounts. Taken together, the public disclosures reveal the essential elements of the purported fraud and correspond in scope and

breadth to the allegations in Relator's original Complaint. For instance, Michael Padron's March 2021 criminal indictment identifies the relationship between the SBA entities and named and unnamed conspirators. *See* **Exhibit 1**, Cause No. 5:21-cr-00124-OG, *United States of America v. Michael Angelo Padron*, in the United States District Court for the Western District of Texas, ECF 1 (criminal indictment) ¶¶ 9-18. This disclosure sets out the essential objects of the conspiracy, including fraudulently obtaining set-aside contracts for entities not eligible, and the specific dates of the fraud: April 16, 2004, through at least November 22, 2017. *Id.* ¶¶ 19-20. The manner and means of the fraud are outlined in detail. *Id.* ¶ 21(a) through (k). The indictment also identifies "Overt Acts" committed by Michael Padron, Michael Wibracht, and others in furtherance of the conspiracy, including in part the following:

> Within the Western District of Texas and elsewhere, in furtherance of the above described conspiracy, and in order to carry out the objects thereof, PADRON, Michael Wibracht, and other co-conspirators, known and unknown to the Grand Jury, committed the following overt acts, among others … **on or about September 30, 2008, caused Company M, Company BH, Company JV, and Company MC to enter into an indemnity agreement in order to obtain bonding from a surety for construction projects, whereby PADRON and Michael Wibracht indemnified the surety on behalf of Company BH; and PADRON agreed to indemnify the surety on behalf of Company JV and Company MC.**

*Id.* ¶ 22 (emphasis added). In sum, public disclosures include the essential misrepresented facts and true facts that are the foundation of Relator's original Complaint – that certain companies obtained bonding for set-aside contracts for which they did not truly qualify, and then requested payments from the government under these contracts.

A public disclosure sufficient to bar an FCA claim can also provide specific details about the types of actors involved in it sufficient "to set the government on the trail of fraud." *Jamison*, 649 F.3d at 329. Given the government's related investigations and criminal prosecutions, it is an understatement to say that the government was "on the trail" long before Relator's self-serving FCA complaint. Here, the public disclosures clearly identified the types of actors involved in the

10

fraudulent scheme. In addition to the criminal proceedings against Michael Padron, Ruben Villarreal and Michael Wibracht, the 2018 Federal Grand Jury Subpoena (**Exhibit 2**) confirms that Travelers was the surety for the contracting entities identified in the original Complaint. The Subpoena further identifies twenty-two (22) personal indemnitors of Travelers related to the surety bonds, including Steven Wibracht. This public disclosure demonstrates that as of 2018 the government investigators were already looking into the indemnity agreements, the surety bonds, and the alleged "consolidated financial statements" described in Relator's original Complaint.[10]

Moreover, the public disclosures make clear that the government was not merely set on the trail of fraud – it successfully prosecuted several participants involved in the very fraudulent scheme alleged by Relator. *See* Exhibit 1 (Michael Padron indictment); **Exhibit 3**, Cause No. 5:20-cr-00456-XR, *United States of America v. Ruben Villarreal*, in the United States District Court for the Western District of Texas, ECF 3 (guilty plea agreement); **Exhibit 4**, Cause No. 5:21-cr-00077-XR-1, *United States of America v. Michael Wibracht*, in the United States District Court for the Western District of Texas, ECF 10 (minute entry noting 3/4/2021 guilty plea).[11]

Public disclosures need not name particular defendants as co-conspirators so long as they alerted the government to the nature of the fraud "and enabled the government to readily identify wrongdoers through an investigation." *Jamison*, 649 F.3d at 327 (citing *In re Nat. Gas Royalties*, 562 F.3d 1032, 1039 (10th Cir. 2009)). As set forth above, the Federal Grand Jury Subpoena (Exhibit 2) demonstrates the government "could have made the inference" that Travelers was

---

[10] Interestingly, the requests in the 2018 Federal Grand Jury Subpoena to Travelers erroneously referenced Hanover Insurance Company, a surety defendant in the *Scollick* lawsuit. *See* Exhibit 2.

[11] *See* also **Exhibit 5**, *Construction Company Owners Pleaded Guilty to Defrauding Federal Program Intended for Service-Disable Veteran-Owned Small Businesses*, Department of Justice, Office of Public Affairs (Mar. 5, 2021); **Exhibit 6**, Don Cloud, *Contractor Charged With Cheating Disabled Vets Out of $250M in Contracts*, Equipment World (Mar. 12, 2021), https://www.equipmentworld.com/business/article/15064252/scheme-nets-250m-in-contracts-set-aside-for-disabled-vets; **Exhibit 7**, Sarah Miller, *Construction Company Owner Indicted on Charges He Defrauded Program for Disabled Vets*, Newsweek (Mar. 17, 2021), https://www.newsweek.com/construction-company-owner-indicted-charges-he-defrauded-program-disabled-vets-1576997.

allegedly involved in the scheme back in 2018 – three (3) years before the original Complaint was filed. *See Solomon*, 878 F.3d at 144-45.

The public disclosures referenced above were more than sufficient to set the government on the trail of any involvement of Travelers in the alleged fraudulent scheme. The first two prongs of the test are met, as prior public disclosures contain essentially the same allegations and transactions as set forth in Relator's original Complaint – regardless of whether Relator purports to have "come[] forward with additional evidence incriminating [Travelers]." *Springfield Terminal*, 14 F.3d at 655-56.

## 2. Steven Wibracht Is Not An Original Source

Given the foregoing, Steven Wibracht cannot show that prior to a public disclosure, he voluntarily disclosed to the government the information on which allegations or transactions in the original Complaint are based. Thus, under the FCA, the only way Relator can prevent this case from being dismissed is for Steven Wibracht to qualify as an "original source." 31 U.S.C. § 3730(e)(4)(A)-(B). To do so, Relator must demonstrate that Steven Wibracht has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and that 1they voluntarily provided the information to the government before filing an action. 31 U.S.C. § 3730(e)(4)(B). Relator fails this prong of the test.

As to personal knowledge, the original Complaint alleges that Steven Wibracht:

> **had no role in procuring the bonds** required to bid for and obtain federal set-aside construction contracts. Steven Wibracht's job duties still had **nothing to do with** dealing with the SBA or getting the companies in the Padron/MAPCO group of companies certified by the SBA as minority-owned or SDVO small businesses or **getting them bonded**.

*See* Compl., ECF 2, ¶ 21.[12]  Thus, the Complaint alleges that Steven Wibracht did not obtain independent knowledge of the allegedly fraudulent scheme during his employment with Padron/MAPCO entities. His employment terminated in 2013. 2d Am. Compl., ¶ 22   Rather, Steven Wibracht states that he "became aware of the existence of the Government's False Claims Act claims in or around early 2021" (*see* Resp. to Travelers' Mot. to Dismiss, ECF 58, at 7), after he "independently discover[ed] cases where sureties have been held liable under the FCA (*id.* at 2, ¶ 8)."  Travelers is not aware of any case in which sureties *have been held liable* under the FCA. Nonetheless, a civil or criminal suit to which the government is a party is a public disclosure under the FCA. 31 U.S.C. § 3730(4)(A)(i).

The Second Amended Complaint admits that Steven Wibracht did not have independent knowledge of the alleged bonding scheme or Travelers role in it prior to the public disclosures discussed above. Indeed, Steven Wibracht did not even materially add to the theories asserted against Travelers in this action, which are substantially the same as asserted in the *Scollick* case that was pending at the time that Relator filed the original Complaint.

In *Scollick*, the relator brought suit against two surety defendants and its bond principals alleging "an elaborate plot … to defraud the federal government by posing as service-disabled veteran-owned small businesses ("SDVOSB") to obtain set-aside contracts." 2022 WL 3020936, at *1. The relator alleged that a group of defendants colluded with a service-disabled veteran to form a company to bid on and obtain Department of Veterans Affairs set-aside contracts, but the company was purportedly owned and controlled by other non-veteran defendants. *Id.* at *3. The relator alleged that the "Construction Defendants could not have filed the allegedly fraudulent bid proposals without surety bonds and performance bonds…." *Id.* at *12. The relator further alleged

---

[12] *See also* Compl., ECF 2, at ¶ 23; 2d Am. Compl., ECF 61, ¶¶ 19, 23, 25, 79.

that the surety defendants, in connection with underwriting, "'obtained facts that [they] knew or should have known violated the government's contracting requirements'" and "'concealed those facts'" from the government. *Id*. The relator asserted FCA claims against the surety defendants based on theories of indirect presentment of false claims, reverse false-claim, and conspiracy. *Id*. The original Complaint in this action contains the same types of allegations and same causes of action.

The Second Amended Complaint alleges that "[i]t was only in 2020 that [Steven Wibracht] began to understand that Padron's creation and maintenance of this group of entities constituted an unlawful conspiracy to defraud the United States," citing the guilty pleas of Ruben Villarreal and Michael Wibracht, and the indictment of Michael Padron. 2d. Am. Compl. ¶ 24. In addition, both the Relator's Response to Travelers' Motion to Dismiss the original Complaint and the Second Amended Complaint confirm that Steven Wibracht based his *qui tam* action against Travelers on *Scollick*. Relator's allegations confirm that when Steven Wibracht learned about the FCA theories advanced against the sureties in *Scollick* (and presumably the potential significant monetary recoveries available under the FCA), he tried to apply them to the facts that were already publicly disclosed. Steven Wibracht is not an original source because he not only "*could have* produced the substance of the complaint merely by synthesizing public disclosures*" (*Solomon*, 2016 WL 7188298 at *4 (emphasis added)), but he has alleged in pleadings that this is exactly what he did. Thus, Relator's claims against Travelers must be dismissed.

### C.    THE SECOND AMENDED COMPLAINT FAILS TO PROPERLY ALLEGE EITHER A DIRECT OR INDIRECT FALSE PRESENTMENT, OR FALSE STATEMENT CLAIM AGAINST TRAVELERS

The Second Amended Complaint alleges that Travelers, along with other Defendants, created and used the "Padron/MAPCO Bonding Program" to fraudulently induce government agencies to certify and award set-aside contracts, to the businesses under the Padron/MAPCO

umbrella, that thereafter presented false claims. Under §3729(a)(1)(A), an entity will be subject to FCA liability if it *knowingly* presents, or causes to be presented, a false or fraudulent claim for payment or approval – *presentment claim*. Under §3729(a)(1)(B), an entity will be subject to liability if it *knowingly* makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim – *false statement claim*. Relator's allegations as against Travelers are legally insufficient to support either type of FCA claim.

Relator did not and cannot allege Travelers actually presented any claim, let alone a false claim, to the government because Relator does not allege how any particular bond Travelers issued was either false or contained a claim. Moreover, the allegations that Travelers caused a fraudulent claim to be submitted by simply providing bonds to set-aside contractors is legally insufficient because the allegations that Travelers knew false claims were submitted are at best merely conclusory factual allegations that do not rise above the speculative level.

1.    **Relator Failed Adequately to Plead That Travelers Submitted or Caused the Submission of a False Claim under §3729(a)(1)(A)**

As in *Scollick*, Relator does not have a direct presentment claim against Travelers because it does not and cannot allege that Travelers actually submitted a false claim to the government – *direct presentment*. *See* 2022 WL 302936 at *12. Thus, the only way for Relator to state a cognizable FCA claim against Travelers would be to allege, with the requisite particularity, that Travelers "caused" a false claim to be submitted – *indirect presentment*. *See id.* Simply alleging, as in the Second Amended Complaint, that Travelers bonded set-aside contractors that submitted false certifications is insufficient to allege that Travelers "caused" the submission of a false claim. *See id.* at *13-14. As such, the Second Amended Complaint fails to meet the heightened requirements for pleading indirect presentment against Travelers with particularity.

2.    **Relator Failed Adequately to Plead That Travelers Submitted or Caused the Submission of a False Statement or Record under §3729(a)(1)(B)**

Relator also fails to plead with requisite particularity that *Travelers* knowingly made or caused false representations to the government. Instead, the Second Amended Complaint continually suggests that Travelers, by merely issuing bonds, submitted or caused the submission of a false claim or statement. *See, e.g.*, 2d Am. Compl. at ¶¶ 28, 127. Relator fails, however, to meet the requirements of Rule 9(b) because he does not allege that, or how, any particular bond was *false*. The bonds constitute a promise by Travelers to perform in the face of the principal contractor's failure to fulfill its payment or performance obligations. There is nothing false or misleading about issuing a bond that states what the surety will do if a contractor defaults.

For its false statement allegations against Travelers, Relator also relies upon a letter sent by Time's John Schuler to the Army Corps of Engineers. *Id.* at ¶ 37. The letter, however, reflects that Mr. Schuler's 2010 representations were his own, made on his own letterhead, without even copying Travelers. *See id.* The letter states that any bonding is subject to Travelers conducting its own underwriting procedure. This letter does not reflect any representation *by Travelers*. Relator's misguided reliance on Mr. Schuler's 2010 letter is emblematic of how Relator repeatedly skirts the Rule 9(b) particularity requirements by lumping Travelers and Time together in an effort to obscure its inability to make specific allegations against Travelers. *See id.* at ¶¶ 6, 31, 34, 48. Such allegations fail, because the "[t]he requirements of Rule 9(b) must be met as to each Defendant." *See U.S. ex rel. Frey v. Health Mgmt. Sys., Inc.*, No. 4:21-CV-02024, 2023 WL 2563239, at *7–8 (S.D. Tex. Feb. 10, 2023) (" it is 'impermissible to make general allegations that lump all defendants together.'"), *R. and R. adopted sub nom. Frey v. Health Mgmt. Sys., Inc.*, 2023 WL

16

2564342 (S.D. Tex. 2023) (emphasis added).[13] Consequently, the Second Amended Complaint should be dismissed as against Travelers.

3.    <strong>Relator Failed Adequately to Plead That Travelers Possessed The <em>Scienter</em> Necessary To Establish A Cognizable FCA Claim</strong>

Each of Relator's FCA claims also require a showing that Travelers acted *knowingly*. The FCA's *scienter* element is established if "a person: (i) has actual knowledge of the falsity of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A)(i)–(iii).[14] Crucially, the Second Amended Complaint fails to allege that any Travelers employee saw or had familiarity with the SBA regulatory requirements governing SBA 8(a) entities, let alone that any employee had sufficient knowledge and understanding of those requirements to appreciate whether a violation had occurred.

In a desperate attempt to satisfy Rule 9(b)'s requirements, Relator relies on a November 20, 2009 email that he did not attach to the Second Amended Complaint. 2d Am. Compl. ¶ 50. In essence, the email shows Travelers' efforts to *avoid* the very conduct that Relator now seeks to attribute to Travelers. *See* **Exhibit 8.** In that email, a Travelers employee forwarded to Time *an article* concerning SBA set-aside contract fraud. *Id.* The article describes generally a U.S. General Accounting Office report that "criticized the Service-Disabled Veteran-Owned Small Business program … run by the [SBA], for failing to properly check applicants before awarding contracts

---

[13] Relator also makes numerous allegations regarding bond dividend checks issued by Travelers and, subsequently, signed over to Defendant Michael Padron. 2d Am. Comp. ¶ 26, 30-31. Relator fails to allege with any detail that a false claim, statement or document was submitted to the government as part of the alleged scheme. Even assuming the alleged dividend scheme somehow concerns a false claim or statement, as pled in the Second Amended Complaint, Travelers' involvement with the dividend checks went no further than merely "writ[ing] a check to the individual Padron controlled entity for which Travelers had issued the bond and forward[ing] it to Schuler at Time." 2d Am. Compl. ¶ 31. These allegations are insufficient to assert a cognizable FCA claim against Travelers.

[14] *See also U.S. ex rel. Schutte v. SuperValu Inc.*, 143 S. Ct. 1391, 1404 (2023); *U.S. ex rel McLain v. Fluor Enters., Inc.*, 681 Fed. Appx. 355, 359 (5th Cir. 2017).

and for failing to take action on disabled veterans' complaints of abuses." *Id.* The article did not even mention, much less "describ[e]" any specific rules or regulations applicable to the SDVOSB set aside program. 2d Am. Compl. ¶ 50.

While the November 20th email may show that the Travelers employee was aware that government procedures to qualify disadvantaged contractors for set-aside programs existed and believed that contractors should comply with them, it falls woefully short of establishing that Travelers had the requisite *scienter* under the FCA. Relator's allegation that the email evidences that "Travelers … was fully aware of the SBA regulations that governed the eligibility of minority or SDVO small businesses to obtain federal set aside contracts" is a mischaracterization. In addition, the allegation is insufficient to meet Relator's burden to plead with particularity that Travelers "knowingly" participated in a conspiracy to flout the applicable SBA regulations. 2d Am. Compl. ¶ 50. In this regard, Relator brushes past the critical fact that Travelers is not a participant in any set-aside program and has *no duty* to investigate or familiarize itself with the SBA rules. *See Scollick,* 2022 WL 3020936 at *13.[15] Indeed, the *Scollick* court categorically declined to find that sureties can have constructive knowledge of federal set-aside regulations, or that they have a duty to "double-check" the government's certification of a contractor into a particular set-aside program. *Id*. at *13 ("Without facts indicating that the insurance defendants *knew* of the specific SDVOSB requirements, this Court will not impose an affirmative duty on insurance and bonding companies to double-check the government's verification.). As such, Relator's allegations against Travelers are legally untenable.

---

[15] Steven Wibracht, on the other hand, as an admitted one-time owner of MAPCO, Blackhawk and others (2d Am. Compl. ¶ 17, 76, 81-82, 84), is actually charged with a duty to know the applicable rules. *See* 2022 WL 3020936 at *13 ("there is no doubt participants in federal programs must familiarize themselves with the requirements….").

The Second Amended Complaint further fails to allege with sufficient particularity that any Travelers employee had actual knowledge that Padron was improperly exerting control over small businesses in violation of SBA rules. Relator asserts that because Travelers interacted with Padron/MAPCO over a period of time, Travelers necessarily had actual knowledge of and participated in Padron's fraud. *See* 2d Am. Compl. ¶ 55. Relator does not explain how communicating with a small business's purported mentor would give Travelers' employees actual knowledge that the mentor was, in fact, improperly controlling the small business. Lacking particular details, Relator falls back on vague, insufficient, and conclusory allegations that "they unlawfully assisted the SBA-certified small businesses . . . while knowing these companies were controlled . . . by Padron and MWibracht…." *Id.* at ¶ 49. These general allegations – wholly unsupported by detail – are clearly insufficient to withstand scrutiny under Rule 9(b).

Finally, Relator alleges that Travelers' underwriting itself evidences knowledge of SBA regulations and Padron's scheme. *Id.* at ¶ 51. Travelers' underwriting had nothing to do with the SBA regulations. Again, as a Miller Act surety, Travelers had no duty to the government to know the regulatory requirements of set-aside programs or to back-check the government's certification of the MAPCO entities. *See Scollick,* 2022 WL 3020936 at *13-14. S*ee also Maxum Enters. LLC v. Auto. Fleet Enters., Inc.,* No. 3:18-CV-0687-B, 2019 WL 1493164, at *5 (N.D. Tex. Apr. 4, 2019) (finding it unreasonable "to place a duty on [sureties] as to third parties arising out of its underwriting activities that is more expansive than what was provided for by the express terms of the bonds[.]"). Accordingly, Relator's allegations pertaining to Travelers' underwriting also are insufficient to plead the requisite *scienter* under the FCA.

### D.    THE CONSPIRACY CAUSES OF ACTION AGAINST TRAVELERS SHOULD BE DISMISSED

"To establish a cause of action for conspiracy under the FCA, a relator must show: (1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by the government; and (2) at least one act performed in furtherance of that agreement." *U.S. ex rel. Dekort v. Integrated Coast Guard Sys.*, 705 F. Supp. 2d 519, 548 (N.D. Tex. 2010) (citing *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008)). Rule 9(b)'s particularity requirement applies to a conspiracy claim, so the relator must plead with particularity both "an unlawful agreement" among alleged co-conspirators and "overt acts" taken in furtherance of a conspiracy. *Smith v. Sanders*, No. 3:12-CV-4377-M, 2015 WL 5768532, at *5 (N.D. Tex. Sept. 4, 2015) (citing *Grubbs,* 565 F.3d at 193). Here, Relator fails this test by making insufficient and conclusory allegations.

Relator alleges two indistinct agreements directly involving Travelers, both insufficient under Rule 9(b). First, Relator alleges that Travelers "agreed to treat as one entity these legally unrelated entities," and therefore required cross-indemnification and consolidated financial statements. 2d Am. Compl. ¶¶ 31, 36. Even if taken as true, it is not unlawful  for a surety to bond companies subject to cross-indemnification or to base its bonding decision on consolidated financial statements. By failing to allege any unlawful aspect to this purported agreement, Relator fails to satisfy the particularity requirements of Rule 9(b). *See Sanders*, 2015 WL 5768532 at *5.

Second, Relator alleges that Travelers was involved in an agreement "to illegally consolidate . . . businesses under the control of Padron/MAPCO," and "conceal that control from the federal government.'" 2d Am. Compl. ¶ 26. Relator fails to support this allegation with even one particular overt act taken by Travelers to consolidate any particular businesses or conceal that consolidation. The only overt actions by Travelers alleged by Relator  – such as issuing bonds and

20

dividend checks – are simply part of providing surety services, not "consolidating businesses." *See id.* at ¶¶ 28, 30. Lacking particularities of an unlawful agreement, the "conspiracy" alleged in the Second Amended Complaint is merely conclusory, and must be dismissed under Rule 9(b). *See Dekort*, 705 F. Supp. 2d at 548; *Frey*, 2023 WL 2563239 at *11.

### E.    STEVEN WIBRACHT LACKS STANDING TO PURSUE FCA CLAIMS AGAINST TRAVELERS

On April 1, 2021, just four days prior to filing this case, the Bankruptcy Court reopened Steven Wibracht's 2017 Chapter 7 bankruptcy. *See* **Exhibit 9**, Bankr. Dkt. 148. On April 3, 2021, Steven Wibracht amended his bankruptcy schedules to list the claims being asserted in this action as assets of his bankruptcy estate. *See* **Exhibit 10**, Bankr. Dkt. 150.  As a result, the FCA claims in this action are being administered as assets of Steven Wibracht's bankruptcy estate by the Chapter 7 trustee, Relator Rodriguez. By operation of the Bankruptcy Code (11 U.S.C. 101, *et seq.*) and applicable law, the bankruptcy trustee – not Steven Wibracht – has *exclusive standing to pursue* the pending FCA claims on behalf of the government. *See, e.g.*, *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 361-64 (5th Cir. 2014) ("Because the FCA suit belonged to [Debtor]'s bankruptcy estate when it was filed, [Trustee] was the real party in interest, with exclusive standing to assert the claims."); *Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 306 (5th Cir. 2001).

Indeed, Relator Rodriguez and each of the law firms representing the Relator in this case affirmatively represented to the Bankruptcy Court that Relator Rodriguez, as the Chapter 7 trustee, is *the real party in interest with standing* to pursue the FCA claims, not Steven Wibracht.[16] Despite

---

[16] *See* **Exhibit 11**, Bankr. Dkt. 157, at 2 of 38, ¶7 ("Prior to the reopening of the case, the ***Debtors sought counsel to pursue the [FCA] claims, but it was determined that applicable law provided that a trustee of the Bankruptcy Case was the party having standing to pursue such claims*.**") (emphasis added); *Id.* at 14 of 38, ¶8.A. (Samuel L. Boyd Decl.) ("On February 3, 2021, Debtor, Steven Wibracht, signed a Retainer Agreement employing me [Samuel L. Boyd] and the Firm to represent him in connection with claims to be asserted under the False Claims Act. Subsequent to the execution of such Retainer Agreement, it was determined that Mr. Wibracht's bankruptcy estate was the party-in-interest with standing to pursue such claims.); *Id.* at 17 of 38, ¶8.A. (Charles A. Riley Decl.) ("claims to be asserted under the False Claims Act. . . . it was determined that Mr. Wibracht's bankruptcy estate was the party-in-interest with standing to pursue such claims.); *Id.* at 21 of 38, ¶8.A. (Roger D. Sander Decl.) ("claims to be asserted under the

these clear representations, and contrary to the law, the Second Amended Complaint nevertheless asserts that Steven Wibracht "has prudential standing to assert his FCA claims in this matter" due to a "substantial interest … above and beyond the interest of his bankruptcy estate." 2d Am. Compl. ¶ 108. This is a legal fallacy. Regardless of any potential *expectancy interest* that Steven Wibracht may have in a recovery (however speculative and unrealistic) from the instant FCA case, that expectation does *not* create standing to pursue the claims against Travelers. *See, e.g.*, *In re Merrill Lynch & Co., Inc. Rsch. Rep.'s Sec. Litig.*, 375 B.R. 719, 725-26 (S.D.N.Y. 2007) ("Although … debtor, may receive any surplus recovered by the Estate after the payment of all debts, fees, and administrative expenses … the mere possibility that he may realize some benefit from the Estate's prosecution of this lawsuit is not sufficient to confer standing. … Because [the debtor] lacks standing, the Court will not permit him to remain a named plaintiff in joinder with the Trustee, or any other party in this action and dismisses his claims as asserted individually."); *In re Griffin*, 330 B.R. 737, 740 (W.D. Ark. 2005) (holding that the mere fact that chapter 7 case was allegedly a surplus case did not give debtor standing to assert causes of action belonging to the estate). Accordingly, because he lacks standing to pursue the FCA claims asserted in this litigation, Steven Wibracht must be dismissed as a party plaintiff/relator.

### F.    STEVEN WIBRACHT IS JUDICIALLY ESTOPPED FROM PURSUING THE FCA CLAIMS AGAINST TRAVELERS

Not only does Steven Wibracht lack standing, but he is further judicially estopped from pursuing the FCA claims against Travelers due to his failure to timely disclose them as assets in his 2017 Bankruptcy. Judicial estoppel prevents a party from asserting a position in a legal

---

False Claims Act. . . . it was determined that Mr. Wibracht's bankruptcy estate was the party-in-interest with standing to pursue such claims.); *Id.* at 24 of 38, ¶8.A. (Melissa Smith Decl.) ("claims to be asserted under the False Claims Act. . . . it was determined that Mr. Wibracht's bankruptcy estate was the party-in-interest with standing to pursue such claims.).

proceeding that is inconsistent with a position taken by that party in a previous proceeding. *See generally U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 271 (5th Cir. 2015) (affirming district court's dismissal of *qui tam* lawsuit); *U.S. ex rel. Gebert v. Transp. Admin. Servs*., 260 F.3d 909, 917 (8th Cir. 2001) (*qui tam* claim barred by judicial estoppel). "'[A]gainst the backdrop of the bankruptcy system … judicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system….'" *Long*, 798 F.3d at 271 (quoting *Reed,* 650 F.3d at 574). In determining whether judicial estoppel applies, the Fifth Circuit considers whether: "'(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently.'" *Id.* at 272 (quoting 650 F.3d at 574). Each element exists here, warranting dismissal of Steven Wibracht as a party plaintiff.

Steven Wibracht admits that he did not disclose his FCA claims against Travelers in his 2017 Bankruptcy until April 3, 2021 – mere days before filing the original Complaint in this case. *See* 2d Am. Compl. ¶¶ 103-06. Nevertheless, Steven Wibracht attempts to avoid the judicial estoppel bar by positing, incorrectly, that his nondisclosure was inadvertent and that he is somehow excused because he was unaware of the mechanics of the FCA and details concerning *qui tam* actions until engaging counsel in 2021. The law does not support Steven Wibracht's position. First, Steven Wibracht had a continuous duty to disclose assets in his Chapter 7 case. *Spicer*, 751 F.3d at 362. The failure to understand the legal nuances or viability of a potential cause of action is no excuse. To the contrary, a debtor in bankruptcy is required to disclose any actual, potential or contingent claim, as long as the debtor is *in possession of facts sufficient to bring a claim*. *See In re Walker*, 323 B.R. 188, 196 (S.D. Tex. 2005) (finding knowledge satisfied when debtor had knowledge of facts even if debtor was not sure of viability of claim); *Long*, 798 F.3d at 272 ("'the

debtor need not know all of the underlying facts or even the legal basis of the claim.'") (quoting *Spicer*, 751 F.3d at 362).[17]

The facts underlying the "scheme" to which Travelers is alleged to have been part, were all known to Steven Wibracht before he filed for bankruptcy protection in September 2017. The Second Amended Complaint alleges that the "MAPCO bonding program" was created in 2008 and that Steven Wibracht was required to provide cross-indemnity in 2013. 2d Am. Compl. ¶¶ 13,16, 84. The bonds serving as the basis for the FCA allegations against Travelers were all issued between 2008 and 2016 (*id.* at ¶ 38), and were the basis of Travelers' 2015 indemnity action against Steven Wibracht and others. *Id.* ¶¶ 91-92.

Despite knowing these facts, Steven Wibracht did not disclose to the Bankruptcy Court any potential affirmative claims against Travelers concerning the "scheme" described in this action until April 13, 2021.[18] It is well settled that the omission of a claim from a debtor's bankruptcy filings "is tantamount to a representation that no such claim exist[s]." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004). As such, courts routinely hold that the first prong for judicial estoppel is met if a debtor fails to disclose a claim on their schedules or otherwise throughout their bankruptcy, and later seeks to pursue it. *Id.*

Further, the averment that Steven Wibracht's failure to disclose was "inadvertent" because he did not understand this "particular kind of legal action at the time he filed for initial bankruptcy

---

[17] *See also Davis v. Fiat Chrysler Auto. U.S., LLC*, 747 Fed. Appx. 309, 314-35 (6th Cir. 2018) ("the test is not whether [debtor] knew of *all* of the facts that *could possibly* support a claim, but instead whether she had sufficient information to know that she had a possible cause of action"); *U.S. ex rel. Bias v. Tangipahoa Parish Sch. Bd.*, 766 Fed. Appx. 38, 43 (5th Cir. 2019) (rejecting debtor's argument "that he was confused about the law" as "irrelevant"); *Roden v. Synergy Techns., Inc.*, 525 B.R. 620, 628 (W.D. La. 2015) (holding that a debtor was duty bound to disclose facts that could give rise to a potential claim "irrespective of his knowledge of the law").

[18] *See* **Exhibit 12,** Bankr. Dkt. 1, p. 18, Sch. A/B, Ques. 34; **Exhibit 13,** Bankr. Dkt. 16, p. 10, Sch. A/B, Ques. 34; **Exhibit 14,** Bankr. Dkt. 84, p. 10, Sch. A/B, Ques. 34; **Exhibit 15,** Bankr. Dkt. 121, p.13, Sch. A/B, Ques. 34. Steven Wibracht signed his bankruptcy schedules as true and correct "[u]nder penalty of perjury." It is axiomatic that such sworn statements are relied upon by bankruptcy trustees, creditors, and the Bankruptcy Court.

protection," is not only legally specious, but is inconsistent with the Affirmative Defenses he asserted on January 29, 2021 in the so-called "Travelers III" litigation. *See* 2d Am. Compl. ¶ 101, 104. In that case, Steven Wibracht asserted defensive allegations virtually identical to the affirmative claims in this action, including that "***as of __July 27, 2013__*** [Travelers] was informed and knew that ***[Steven and Erin Wibracht] had been expelled*** from MAPCO, Inc. ***due to their refusal to participate in its illegal schemes*** and were thus no longer involved with any of the companies for which the bonds in question were issued." **Exhibit 15,** 5:20-cv-01433-XR, ECF 9, ¶ 19 (emphasis added). Regardless of the veracity of the statement, Steven Wibracht's assertion in Travelers III that he was terminated from MAPCO **in 2013** *because he refused to participate in the scheme* – the same scheme described in this action – is wholly inconsistent with his denial of all knowledge of the claims until January 2021. Clearly, Mr. Wibracht's failure to disclose the claims against Travelers in his bankruptcy was neither excusable nor inadvertent.

Finally, Relator's contention that "neither the bankruptcy court nor Relator Wibracht's creditors relied on or accepted any non-disclosure of Relator Wibracht's potential FCA claims in his initial bankruptcy schedules" (2d Am. Comp. ¶ 105) is legally and factually untenable. Acceptance or adoption by a court of a prior position "does not require a formal judgment." *Crewboats,* 374 F.3d at 335. Rather, acceptance or adoption by a court "only requires 'that the first court has adopted the position urged by the party either as a preliminary matter or as part of a final disposition.'" *Id.* (citations omitted).

The Chapter 7 trustee, Relator Rodriguez, relied on Steven Wibracht's representations in preparing and filing his No-Asset Report on September 12, 2019, concluding that all estate property had been fully administered. *See* **Exhibit 16**. The Bankruptcy Court accepted Steven Wibracht's prior position by omission – that there were no affirmative claims against Travelers of the kind now being alleged here – when it accepted the Chapter 7 trustee's final No-Asset Report

25

and closed the case on September 13, 2019. *See* **Exhibit 17**. *See Walker*, 323 B.R. at 195 (finding acceptance of previous position satisfied when the no-asset case was closed); *Crewboats,* 374 F.3d at 335 ("the bankruptcy court issued a "no asset" discharge, thereby adopting the [debtors]' position [*i.e.*, non-disclosure]").

For all of the foregoing reasons, Steven Wibracht is barred by the doctrine of judicial estoppel to pursue – separate from Relator Rodriguez – claims against Travelers in this action.

## G.    FALSE CLAIMS ACCRUING PRIOR TO APRIL 3, 2015 ARE BARRED BY THE STATUTES OF LIMITATION

31 U.S.C. § 3731(b) establishes the statutes of limitations for the False Claims Act. Claims brought under § 3731(b)(1) must be brought within "6 years after the date on which the violation . . . is committed." Claims brought under § 3731(b)(2) must be brought within "3 years after the date when facts material to the right of action are known or reasonably should have been known by the government . . . but in no event more than 10 years after the date on which the violation is committed." Whichever date comes last determines the controlling statute of limitation. *See* 31 U.S.C. § 3731(b). In effect, § 3731(b)(1) is a six year statute of limitation, and § 3731(b)(2) is a ten year statute of repose, both of which start on the date of the violation. *See Cochise Consultancy, Inc., v. U.S. ex rel. Hunt*, 139 S. Ct. 1507, 1510-11, 1513 (2019). The submission of a claim is the violation that marks the appropriate date for the purposes of § 3731(b). *See Smith v. U.S.*, 287 F.2d 299, 304 (5th Cir. 1961). The false presentment claims alleged in the Second Amended Complaint relate to the claims for payment presented to the government under the identified contracts by parties other than Travelers. The false statements allegedly attributable to Travelers relate to creating and issuing surety bonds.

As the original Complaint was not filed within three (3) years after the date when facts material to the right of action were known or reasonably should have been known by the

government, the false presentment and false statement claims can only be asserted in accordance with § 3731(b)(1) and, therefore, must be brought within six (6) years after the date on which the purported violation is committed. Relator Rodriguez filed this lawsuit on April 5, 2021. Accordingly, each alleged false claim that was submitted prior to April 5, 2015, is barred by the statute of limitations and should be dismissed for failure to state a cause of action. *Kaiser Aluminum Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).[19]

The ten year statute of repose under § 3731(b)(2) is unavailable to Relator Rodriguez as the wide-ranging Department of Justice investigation regarding the allegations and transactions in this *qui tam* action (as supported by earlier investigations of the SBA Office of Inspector General, the U.S. Army Criminal Investigative Command's Major Procurement Fraud Unit, the General Service Administration Office of Inspector General, the Department of Veteran Affairs Office of Inspector General, and the Defense Criminal Investigative Service) was well underway prior to April 5, 2018, as evidenced by a Department of Justice press release (Exhibit 5) and the existence of the Federal Grand Jury and its 2018 Subpoena to Travelers (Exhibit 2). For this reason, the government's Complaint in Intervention is pursuing false claims against Defendant Padron *only* between April 2015 and April 2021, consistent with 31 U.S.C. § 3731(b)(1). *See* Gov't Compl. in Interv. [ECF 35], ¶¶ 33-48. Even if the ten year statute of repose under § 3731(b)(2) were available at this juncture for alleged violations asserted against Travelers, all purported violations of the FCA committed prior to April 5, 2011 are time barred and must be dismissed with prejudice.

## H.    THE CLAIMS AGAINST TRAVELERS ARE CONTRARY TO PUBLIC POLICY

The Small Business Act, 15 U.S.C. § 631(a), makes clear that:

---

[19] S*ee Doe v. Linam*, 225 F. Supp. 2d 731, 734 (S.D. Tex. 2002) ("A Rule 12(b)(6) motion to dismiss for failure to state a claim is the proper vehicle by which to assert a limitations defense where a plaintiff's complaint shows affirmatively that his claims are time-barred.") (citing *Herron v. Herron*, 255 F.2d 589, 593 (5th Cir. 1958)).

> It is the declared policy of the Congress that the Government should aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns in order to preserve free competitive enterprise, to insure that a fair proportion of the total purchases and contracts or subcontracts for property and services for the Government (including but not limited to contracts or subcontracts for maintenance, repair, and construction) be placed with small-business enterprises, … and to maintain and strengthen the overall economy of the Nation.

As Relator acknowledges, businesses qualify for set aside contracts only if they are "economically disadvantaged," new to federal contracting, or sufficiently small in size. *See* 2d Am. Compl. ¶ 56, 109, 112-13, 118. Companies that qualify are often unable independently to secure bonding because they lack sufficient personal or business assets to qualify for bonding. Nevertheless, federal statutes require most federal construction contract awardees to obtain performance and payment bonds guaranteeing the performance of the contract. *See* 40 U.S.C. § 3131; 48 C.F.R. § 28.102-1 (requiring surety bonds for the award of any construction project in excess of $150,000). These competing requirements create a tension – the government sets aside contracts for qualifying small and disadvantaged businesses, but then requires those businesses to obtain bonding they often cannot independently obtain.

This tension is often resolved by sureties bonding small and disadvantaged businesses based upon cross-indemnification and support of larger subcontractors, mentors and/or joint venture partners. Contrary to Relator's insinuations, such bonding and cross-indemnification are not "illegal." Without cross-indemnification to enable disadvantaged businesses to obtain bonds needed to qualify for contracts set aside specifically for them, and federal efforts to support such businesses would be frustrated.

Recognizing this, the government has implemented programs intended to *reduce the risk to sureties* and make it *easier* for these high-risk businesses to obtain bonding. *See* **Exhibit 18**, *SBA Mentor-Protégé program* (explaining the benefits of the SBA's mentor-protégé program

include "[f]inancial assistance in the form of . . . *bonding*") (emphasis added);[20] 15 U.S.C. § 694b(b) (SBA Surety Bond Guarantee program); **Exhibit 19**, *Administrator Guzman Announces Streamlined Support for Local Infrastructure Contractors with Improved Surety Bond Process* (August 24, 2022) ("SBA programs … are designed to help small business thrive and grow) (quoting Jennifer Vigil, Acting Director for the SBA's Office of Surety Guarantees).[21] The SBA has even commended Travelers for its role as a partner in its mission to provide bonding in furtherance of the congressional mandate to aid small and disadvantaged contractors. **Exhibit 20**, *SBA Recognizes Top Active Surety Partners,* Oct. 30, 2020.[22]

Relator essentially argues that by bonding high-risk contractors and entering into indemnification agreements with entities that do not themselves qualify for set-aside contracts, Travelers tied itself to a conspiracy to violate the FCA. *See* 2d Am. Compl. ¶¶ 26, 38, 41, 67. If allowed to proceed, Relator's claims will significantly *increase the surety's risk* and *reduce* the availability of bonding for small and disadvantaged contractors by driving sureties out of the market. Further, law and public policy dictates that the party contracting with the government bears the responsibility for knowing and complying with applicable regulations. *Scollick*, 2022 WL 3020936 at 25-26 (noting that "it is the *construction defendants* who are obligated to familiarize themselves with the SDVOSB regulations, because they are dealing with and seeking payment from the federal government … [not] a third-party insurer or bond underwriter."). Contrary to Relator's assertions, "it is not the intention of Congress to extend or enlarge the liability of the surety [under a Miller Act bond] beyond the contractual or quasi-contractual obligations of the

---

[20] Available at https://www.sba.gov/federal-contracting/contracting-assistance-programs/sba-mentor-protege-program (last visited 9/20/23).

[21] Available at https://www.sba.gov/article/2022/aug/24/administrator-guzman-announces-streamlined-support-local-infrastructure-contractors-improved-surety (last visited 9/20/23).

[22] Available at https://www.sba.gov/article/2020/oct/30/sba-recognizes-top-active-surety-partners (last visited 9/20/23).

contractor who remains primarily liable." *U.S. ex rel E. Gulf Inc. v. Metzger Towing, Inc.,* 910 F.2d 775, 781 (11th Cir. 1990). Thus, Relator's claims against Travelers fail as against public policy.

## VI.    CONCLUSION

For the foregoing reasons, Defendant Travelers Casualty and Surety Company of America respectfully requests that this Court grant this Motion to Dismiss, dismiss Travelers from this action, and grant Travelers such further relief that this Court determines to be just and proper.

Dated: September 21, 2023                    Respectfully submitted,

By: /s/ Hanna Lee Blake
Timothy E. Heffernan (*admitted pro hac vice*)
Robert G. Barbour (*admitted pro hac vice*)
Hanna Lee Blake (*admitted pro hac vice*)
**WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.**
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
Telephone: (703) 749-1000
Facsimile: (703) 893-8029
theffernan@watttieder.com
rbarbour@watttieder.com
hblake@watttieder.com

Arnold A. Spencer
Texas State Bar #00790791
**SPENCER & ASSOCIATES**
5956 Sherry Lane, Suite 2000
Dallas, Texas  75225
Telephone: 214-385-8500
arnoldspencer75225@gmail.com
***Counsel for Defendant Travelers Casualty and Surety Company of America***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served on this 21st day of September, 2023, to all counsel of record via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ Hanna Lee Blake
Hanna Lee Blake