**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| STEVEN BRICE WIBRACHT INDIVIDUALLY AND/OR THROUGH JOSE C. RODRIGUEZ AS TRUSTEE OF THE BANKRUPTCY ESTATE OF STEVEN BRICE WIBRACHT AND ERIN MICHELLE WIBRACHT, and UNITED STATES OF AMERICA *ex rel.*, | § § § § § § § § | |
| | § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION NO.  2:21-CV-00125-JRG |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TIME INSURANCE AGENCY A/K/A STATEWIDE SURETY, MICHAEL PADRON, and JOHN W. SCHULER, | § § § § § § | |
| *Defendants*. | § § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

## I.   INTRODUCTION

Before the Court are two motions. The first is the Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6) (the "Time Motion") filed by Defendants Time Insurance Agency, Inc. ("Time") and John W. Schuler ("Schuler"). (Dkt. No. 75.) The Second is the Motion to Dismiss the Second Amended Complaint (the "Travelers Motion") filed by Defendant Travelers Casualty and Surety Company of America ("Travelers"). (Dkt. No. 76.) Relator Steven Brice Wibracht ("Relator Wibracht") opposes both motions. (*See* Dkt. Nos. 96, 97.) For the following reasons, the Court finds that the both the Time Motion and the Travelers Motion should be **GRANTED-IN-PART** and **DENIED-IN-PART**.

## II.   BACKGROUND

Relator Wibracht filed this action on April 5, 2021, and filed the Second Amended Complaint on July 11, 2023. (Dkt. Nos. 1, 61.) In the Second Amended Complaint Relator Wibracht alleges that Defendant Michael Padron ("Padron") created and/or controlled certain entities to fraudulently obtain lucrative government construction contracts set aside for service-disabled veteran-owned ("SDVO") small businesses. (*See* Dkt. No. 61, at ¶¶ 50–79.) Under the Small Business Act, the federal government is "encourage[d]" to set aside a "minimum percentage" of contracts to award to SDVO small businesses. (*Id.* at ¶ 109.) Relator Wibracht alleges that Padron began creating entities, such as Blackhawk Construction, LLC ("Blackhawk"), that purported to be eligible SDVO small businesses owned at least fifty-one percent (51%) by a service-disabled veteran (collectively, the "Blackhawk Entities"), but in reality their day-to-day operations were controlled by Padron and others. (Dkt. No. 61, at ¶¶ 59–65.) Under these pretenses, Relator Wibracht contends, the Blackhawk Entities bid for and were awarded many contracts from 2008–2016 that were set aside for SDVO small businesses.[1] (*See generally* Dkt. No. 61.)

Before obtaining contracts from the federal government under the set-aside program, SDVO small businesses must obtain bonds. (Dkt. No. 96 at 1.) Such bonds were obtained through Travelers, via its alleged agent, Time. (*Id.*)

Relator Wibracht alleges that Padron, Time, Travelers, and Schuler conspired and agreed to create a web of legally unrelated companies, recruit service-disabled veterans to own them on paper, and allow Padron to control them. (*Id.* at 2.) Relator Wibracht also contends that Travelers, through Time, provided surety bonds to entities which both Travelers and Time knew to be sham companies set up for receiving set-aside contracts. (*Id.*)

---

[1] The United States has intervened in this action as to Defendant Padron, and also contends that these contracts should not have been awarded to the Blackhawk Entities because they were not controlled by their respective service-disabled veterans. (*See* Dkt. No. 75 at 2.)

Against this backdrop, Relator Wibracht and the United States allege that Padron violated certain provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3729. (Dkt. No. 75 at 2.) Each bid made by the Blackhawk Entities constituted a "false claim" because a service-disabled veteran did not actually control the entity. (*Id.*) Relator Wibracht also asserts FCA claims against Travelers and Time as the issuer of surety bonds and the producing agent, respectively, for the Blackhawk Entities. (Dkt. No. 61 at ¶¶ 126–129.)

### III.   LEGAL STANDARDS

#### A.   Rule 12(b)(1)

Rule 12(b)(1) authorizes dismissal of a case for lack of subject-matter jurisdiction where the court lacks statutory and constitutional power to adjudicate the case. FED. R. CIV. P. 12(b)(1); *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

#### B.   Rule 12(b)(6)

Under the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Court can dismiss a complaint that fails to meet this standard. FED. R. CIV. P. 12(b)(6). To survive dismissal at the pleading stage, a complaint must state enough facts such that the claim to relief is plausible on its face. *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads enough facts to allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court accepts well-pleaded facts as true and views all facts in the light most favorable to the plaintiff but is not required to accept the plaintiff's legal conclusions as true. *Id.* "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Twombly,* 550 U.S. at 555.

In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "The court may consider 'the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.'" *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 935 (E.D. Tex. 2016) (quoting *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

### C. Rule 9(b)

Rule 9(b) imposes a heightened pleading standard on fraud claims, including *qui tam* claims brought under the FCA. *See* FED. R. CIV. P. 9(b); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). An FCA claim "may" satisfy Rule 9(b) if the complaint "alleg[es] particular details of a scheme to submit false claims" and those details are "paired with reliable indicia that lead to a strong inference that claims were actually submitted." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009). A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6). *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997).

## IV.   ANALYSIS

### A. Relator Wibracht and Trustee Rodriguez Are Not Judicially Estopped from Bringing This Action

Time and Travelers, in their respective motions, assert that the doctrine of judicial estoppel bars Relator Wibracht and Trustee Rodriguez from bringing this action because of representations Wibracht made in bankruptcy court. (Dkt. No. 75 at 8–10; Dkt. No. 76 at 22–26.)

Relator Wibracht filed for Chapter 7 bankruptcy in 2017. *In re Wibracht*, No 17-52300rbk, Bankr. W.D. Tex. Bankruptcy debtors must disclose all assets to the bankruptcy court, including potential causes of action. *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012). Wibracht did not initially disclose the FCA claims asserted in this action to the bankruptcy court or to the Trustee the bankruptcy court had charged with administering the assets, Jose C. Rodriguez ("Rodriguez"). (Dkt. No. 75 at 3, 9.) Trustee Rodriguez filed a "No-Asset Report" with the bankruptcy court on September 12, 2019, asserting that Relator Wibracht possessed no assets. (Dkt. No. 75 at 9; Dkt. No. 76-17 at 1.) The report stated that Relator Wibracht and Trustee Rodriguez "ha[d] made a diligent inquiry into the financial affairs of the Debtor(s) … and there is no property available for distribution from the estate(s) over and above that exempted by law." (Dkt. No. 76-17 at 1.) The day after the bankruptcy court the day after it received the "No-Asset Report," it closed the case. (Dkt. No. 76-18 at 2.)

Relator Wibracht asserts that he became aware of the "existence" of the FCA claims in early 2021 and moved to reopen the bankruptcy case. (Dkt. No. 96 at 3.) Based on this, the bankruptcy court "reopened the case under seal, and the U.S. Trustee's office reappointed Chapter 7 Trustee Rodriguez to administer the claims." (*Id.*) Shortly thereafter, this suit was filed. (*Id.* at 9.)

"Judicial estoppel is 'a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position.'" *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) (quoting *Brandon v. Interfirst Corp.,* 858 F.2d 266, 268 (5th Cir. 1988)). The doctrine is equitable in nature, and its application is within the trial court's discretion. *Id.* Courts look to the following elements: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court

accepted the prior position; and (3) the party did not act inadvertently." *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (*en banc*).

Time, in its Motion, argues that all three elements are met. (Dkt. No. 75 at 9–10.) It argues that the first element is met because Wibracht failed to disclose the FCA claims in his bankruptcy petition, which is tantamount to a statement that the claims do not exist; the second element is met because the bankruptcy court closed the case after receiving the no-asset report, thereby accepting the position; and the third element is met because Wibracht knew of the factual bases for the claims long before he filed for bankruptcy, showing the non-disclosure was not inadvertent. (Dkt. No. 75 at 8–10 (citing *In re Coastal Plains*, 179 F.3d 197, 205-06 (5th Cir. 1999), *In re Walker,* 323 B.R. 188, 196 (Bankr. S.D. Tex. 2005)).) Travelers makes substantially similar arguments in its motion. (*See* Dkt. No. 76 at 23–26 (citing *In re Walker*, 323 B.R. 188, 196 (S.D. Tex. 2005), *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 2712 (5th Cir. 2015), *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004)).)

In response to the Time Motion, Relator Wibracht first argues that judicial estoppel does not apply to Trustee Rodriguez. (Dkt. No. 96 at 7 (quoting *Reed v. City of Arlington,* 650 F.2d 571, 574 (5th Cir. 2011) (*en banc*) ("absent unusual circumstances, an innocent trustee could pursue for the benefit of creditors a judgment or cause of action that the debtor failed to disclose in bankruptcy")).) Next, Relator Wibracht argues that the only times this doctrine has been applied against bankruptcy debtors has been when the debtor was clearly aware of the claims. (*Id.*) Relator Wibracht urges that Wibracht did not disclose the FCA claim in his 2017 bankruptcy schedule because he was unaware that a person other than the injured party, the government, could bring these claims. (*Id.* at 8.) Further, Relator Wibracht contends that the bankruptcy court did not accept the non-disclosure because there was no discharge in bankruptcy. (*Id.* (citing *In re Miller*, 347 B.R.

6

48, 54-55 (Bank. S.D. Tex. 2006)).) Relator Wibracht asserts that *In re Walker* is distinguishable because the debtor pursued a claim without informing the bankruptcy court. (*Id.* at 9 (citing *In re Walker*, 323 B.R. 188 (Bank. S.D. Tex. 2005)).) Relator Wibracht also argues that the "equitable doctrine of judicial estoppel should not be applied to inequitably deprive the Government of its [] interest in the case, to the substantial benefit of guilty defendants." (*Id.*)

In response to the Travelers Motion, Relator Wibracht argues that *Long* is distinguishable because there the Debtor pursued his case during Chapter 13 bankruptcy without informing the bankruptcy court, unlike Wibracht during his Chapter 7 bankruptcy. (Dkt. No. 97 at 27 (citing *Long*, 798 F.3d 265).) Otherwise, Relator Wibracht's response to the Travelers Motion is substantively the same as their response to the Time Motion. (*See* Dkt. No. 97 at 24–29.)

In reply, Time reasserts that legal misunderstanding does not make non-disclosure inadvertent. (Dkt. No. 103 at 3.) Further, Time contends that the bankruptcy court did not need to discharge the claim for it to adopt Wibracht' s position. (*Id.* at 4.) Traveler's reply in this regard is substantially and substantively the same as Time's. (*See* Dkt. No. 104 at 9–10.)

In sur-reply to Time's motion, Relator Wibracht urges that *Coastal Plains* was clear that "in considering judicial estoppel for bankruptcy cases, the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." (Dkt. No. 112 at 2 (quoting *Coastal Plains*, 179 F.3d at 210).) Relator Wibracht also argues that *Coastal Plains* illustrates that there must be discharge for there to be acceptance. (*Id.* at 3 (citing *In re Miller,* 347 B.R. 48, 54–55 (Bankr. S.D. Tex. 2006)).) Relator Wibracht's sur-reply to the Travelers Motion in this regard is substantially and substantively similar to its sur-reply to the Time Motion. (*See* Dkt. No. 113 at 9–10.)

As a preliminary matter, Trustee Rodriguez's no-asset report should be treated as a statement made directly by Relator Wibracht to the bankruptcy court. No party argues otherwise. Indeed, statements made by a Debtor to a Trustee, that a Trustee relies upon in making statements to a court should be treated the same as statements made directly to a court. The purpose of the judicial estoppel doctrine is to "protect" both the "judicial system" and the "integrity of the judicial process." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) (citation omitted).  An opposite holding would allow Debtors to easily abuse the judicial process. Accordingly, the Court holds that these statements, though not made directly to a court, should be treated as though they were made directly to the bankruptcy court.

The Court finds that the first element is satisfied—the positions are plainly inconsistent. Wibracht asserted by omission to the bankruptcy court that he had no claims, and he now asserts that he does have an FCA claim. *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004) ("[T]he [Debtor's] omission of [a claim] from [its] mandatory bankruptcy filings is tantamount to a representation that no such claim existed." (citation omitted)).

The Court also finds that the second element is satisfied—the bankruptcy court accepted the prior position. Relator Wibracht asserts that *Coastal Plains* supports their position, but it does not. (*See* Dkt. No. 112 at 4.) The second prong was not "seriously dispute[d]" in *Coastal Plains*. *See* 179 F.3d at 210.

*In re Miller*, also cited by Relator Wibracht, is also distinguishable. (*See* Dkt. No. 96 at 8.) There the bankruptcy court affirmatively stated that it did not "review or rely" on the bankruptcy schedule filed by Debtor in determining to close the case. *In re Miller*, 347 B.R. at 55. Thus, the court concluded, it "never knew about or made a ruling based on, Debtor's failure to disclose the claim." *Id.* No such statement from the bankruptcy court is present in this case.

Relator Wibracht argues that discharge is necessary for a position to be accepted by a bankruptcy court, but no case has ever held as much. (*See* Dkt. No. 96 at 8.) Indeed, this conflicts with the Fifth Circuit's guidance that "judicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *Coastal Plains*, 179 F.3d at 206 (quoting *Reynolds v. Commissioner of Internal Revenue*, 861 F.2d 469, 473 (6th Cir. 1988)).)

The Court finds that the bankruptcy court clearly accepted and relied upon the representation made to it. The day after Trustee Rodriguez filed the no asset report, the bankruptcy court closed the case. (*See* Dkt. Nos. 76-17, 76-18 at 2.) This indicates that the bankruptcy court accepted the statement and acted upon it. It strains credulity to argue otherwise.

However, the Court finds that the third prong—whether the statement was made inadvertently—is not met. The Fifth Circuit has held that there are two paths a debtor may traverse to overcome this prong, the "lack of knowledge path" or the "no motive for concealment" path: "Our review of the jurisprudence convinces us that, in considering judicial estoppel *for bankruptcy cases*, the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *In re Coastal Plains*, Inc., 179 F.3d 197, 210 (5th Cir. 1999) (emphasis in original).

Under the "lack of knowledge path" the Fifth Circuit has stated: "To show inadvertence through lack of knowledge, a debtor must show not that she was unaware that she had a duty to disclose her claims **but that she was unaware of the facts giving rise to them**." *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 273 (5th Cir. 2015) (emphasis supplied) (citations, quotations, and ellipses omitted). There is no doubt that Relator Wibracht had knowledge of the underlying facts of this dispute when the no-asset report was filed. (*See* Dkt. No. 76 at 23–24; Dkt.

No. 61 (Second Amended Complaint) at ¶¶ 103–06.) Accordingly, Debtor cannot show inadvertence through this path.

Under the lack of motivation path, "the motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012). However, after the defendant sets out a motivation to conceal, the burden shifts to plaintiff to show that the omission was inadvertent. *Id.* ("After [defendant] set out this motivation to conceal, it fell to [plaintiff] to show that the omission of his claims from his schedule of assets was inadvertent." (citation omitted)).

Here, Defendants assert that Relator Wibracht had a motive to conceal—to avoid alerting creditors as to the existence of the claim—accordingly the burden shifts to Relator Wibracht to show that his disclosure was indeed inadvertent. (*See* Dkt. No. 75 at 9.) Wibracht asserts that "neither [he] nor his attorney nor the Trustee had reason to know of the [] FCA claim." (Dkt. No. 96 at 8.)  Wibracht also argues that he did not try to hide the claim—he involved the bankruptcy court once he discovered the claim before taking action on it. (Dkt. No. 113 at 9.) The Court credits this explanation. It does not appear that Wibracht is playing "fast and loose with the [C]ourt," which is what the judicial estoppel doctrine is meant to prevent. *Coastal Plains*, 179 F.3d at 206 (citation and quotation omitted). Wibracht's decision to tell the bankruptcy court before filing this suit, demonstrates that Wibracht's original non-disclosure was inadvertent.

Time relies on *Superior Crewboats* to compel an opposite result but i[t is distinguishable. (*See* Dkt. No. 103 at 4.) There, the Fifth Circuit held that "the [debtors] cannot be permitted, at this late date, to re-open the bankruptcy proceeding and amend their petition. Judicial estoppel was designed to prevent such abuses." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 336 (5th Cir.

2004). The debtors had filed a lawsuit while the bankruptcy proceeding had initiated and failed to disclose it for almost six months. *See id.* at 333. This abuse is not present here. Wibracht disclosed the claim to the bankruptcy court before bringing this suit, and the bankruptcy court re-opened proceedings, again before Wibracht brought the case. *See In re Wibracht*, No 17-52300rbk, Bankr. W.D. Tex, Dkt. No. 145.

Lest there be any doubt, Trustee Rodriguez's claim is also inadvertent because he relied upon Wibracht. *In re Miller*, 347 B.R. at 56–57. Accordingly, the Court finds that the third prong is not satisfied as to both Relator Wibracht and Trustee Rodriguez. Judicial estoppel does not attach in this case.

### B.  Claims That Predate March 23, 2013 Are Time Barred, But the Rest Are Not

Time and Travelers allege that certain of Relator Wibracht's claims are time barred. (*See* Dkt. No. 75 at 11–14; Dkt. No. 76 at 26–27.)

A civil action under section 3730 may not be brought—

> (1) more than 6 years after the date on which the violation of section 3729 is committed, or
>
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,

whichever occurs last.

31 U.S.C. § 3731(b). Under subsection (1), a relator is not permitted to bring claims for a violation of the FCA more than six years after the date on which that violation was committed. *Accord United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 505 F. Supp. 2d 1, 18 (D.D.C. 2007) ("As § 3731(b) clearly states, plaintiffs receive the benefit of a statute of limitations beginning … six years from the date of the False Claims Act violation[.] . . . The six-year statute of limitations

11

under § 3731(b)(1) begins on the date six years prior to the date the complaint was filed, and ends at the filing of the relator's complaint."). However, under subsection (2), a relator may bring a case up to three years after the date the government knew or should have known of facts material to the alleged violations. *See* 31 U.S.C. § 3731(b)(2). Despite this, claims that occurred more than 10 years ago shall not be allowed in any event. *Id.* The last clause—"whichever occurs last"— instructs the court to apply whichever subsection that produces the latest cutoff date. *Id.*

Relator Wibracht filed his original complaint on April 5, 2021, his First Amended Complaint on March 13, 2023, and his Second Amended Complaint on July 11, 2023. (Dkt. Nos. 1, 16, 61.) The activity complained of took began in 2008 and continued through 2016. (Dkt. No. 61 at ¶¶ 13, 38.)

Time argues that any claims for violations that were committed prior to April 5, 2015—six years before filing suit—should be time barred. (Dkt. No. 75 at 13.) Moreover, with respect to the claims against Schuler, Relator Wibracht first named Schuler as a defendant in his First Amended Complaint, which was filed on March 13, 2023. (Dkt. No. 16.) Accordingly, Time argues that any claims against Schuler for violations that predate March 23, 2017 are time-barred. (Dkt. No. 75 at 13.) Time also argues that Relator Wibracht is not entitled to the equitable tolling provision because the United States was investigating the facts of this case at least as early as May 2018, nearly three years before Relator Wibracht filed his Original Complaint, and nearly five years before he filed his Second Amended Complaint. (*Id.* at 13–14) Time also argues that all claims predating April 5, 2011, ten years before the Original Complaint was filed, would violate the absolute 10-year bar. (*Id.* at 14.)

Travelers argues in its motion that a subpoena issued to it in May of 2018 shows that there can be no equitable tolling. (Dkt. No. 76 at 27 (citing Dkt. No. 76-2).) Travelers also points to the

government's decision to only seek relief for violations from April 2015 as support for its theories. (*Id.* (citing Dkt. No. 35).)

In Relator Wibracht's response to the Time Motion, he states that he "do[es] not disagree that any claims arising from ***FCA violations*** by Time, Travelers, or Padron that predate April 5, 2011 and any claim arising from ***FCA violations*** by Schuler, individually and apart from Time, if any, that predate March 23, 2013 are time barred. 31 U.S.C. § 3731(b)(2)." (Dkt. No. 96 at 13 (emphasis in original).) Relator Wibracht has alleged that the Government has had no knowledge of Time, Travelers, and Schuler's knowing participation in the fraudulent scheme prior to the filing of this action on April 5, 2021. (Dkt. No. 96 at 13–16.)

The remaining briefing on this topic does not meaningfully contribute to these arguments. (*See* Dkt. No. 97 at 29–32; Dkt. No. 103 at 7; Dkt. No. 104 at 10; Dkt. No. 112 at 6; Dkt. No. 113 at 10.)

The Court finds that claims against Time, Travelers, and Padron prior to April 5, 2011, and that claims against Schuler prior to March 23, 2013 are time barred under the absolute 10-year bar of 31 U.S.C. § 3731(b)(2).

Defendants' arguments are not persuasive. As a preliminary matter, the government's decision to only seek recovery for claims occurring since April of 2015 is of no import under the statute. Moreover, Defendants have not shown that this suit violates the 3-year bar in 31 U.S.C. § 3731(b)(2). The earliest the government knew of the Defendant's involvement in a fraudulent bonding scheme was in May of 2018, when the government issued a subpoena to Travelers. (*See* Dkt. No. 76-2.) The Original Complaint was filed within three years of that date, in April of 2021. (Dkt. No. 1.) Therefore, there is no violation of 31 U.S.C. § 3731(b)(2).

Defendants also argue that the Court should apply subsection (b)(1), which contains a six-year bar, but the statute instructs that the Court should apply the more lenient subsection. *See* 31 U.S.C. § 3731(b) (instructing that between the time bars laid out in (b)(1) and (b)(2), "whichever occurs last" controls, in the sense that the last clock to elapse controls). *See also Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1513 (2019) ("[I]f the Government discovers the fraud on the day it occurred, it would have 6 years to bring suit, but if a relator instead discovers the fraud on the day it occurred and the Government does not discover it, the relator could have as many as 10 years to bring suit"). In their Motions, Defendants have not carried their burden to show that that (b)(1) is more lenient than (b)(2).   31 U.S.C. § 3731(b). Absent this showing, the Court declines to apply the six-year bar in (b)(1). Additionally, the suit does not violate the 3-year bar in subsection (b)(2), meaning that (b)(2) is the more lenient subsection and as a result (b)(1) should not be applied.

### C.   Relator Wibracht Has Adequately Alleged that He is an Original Source of the Information in the Second Amended Complaint

Under the FCA's public disclosure bar, a court must dismiss an FCA action if "substantially the same allegations or transactions" were previously disclosed through certain public channels, unless "the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). Courts rely on a three-part test to determine whether this bar applies: "(1) whether there has been a 'public disclosure' of allegations or transactions; (2) whether the *qui tam* action is 'based upon' such publicly disclosed allegations; and (3) if so, whether the relator is an 'original source' of the information." *United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 373 (5th Cir. 2017).

Courts generally analyze the first two steps of the public disclosure bar test together, as this "allows the scope of the relators' action in step two to define the allegations or transactions that

14

must be publicly disclosed in step one." *U.S. ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 327 (5th Cir. 2011). "The key for determining whether allegations or transactions have been publicly disclosed is whether the critical elements of the fraudulent transaction were in the public domain." *United States ex rel. Fisher v. Homeward Residential, Inc.*, 2015 WL 3776444, at *3 (E.D. Tex. June 17, 2015) (quoting and citing *United States ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 519 (N.D. Tex. 2012)). "The critical elements have been sufficiently disclosed if the disclosure, taken together, would enable the government to draw an inference of fraud." *Id.* (citing *Colquitt*, 864 F. Supp. 2d at 519). The first two elements are satisfied if the disclosures are "sufficient to set the government on the trail of the fraud." *Jamison*, 649 F.3d at 329 (citing *In re Natural Gas Royalties,* 562 F.3d 1032, 1042–43 (10th Cir. 2009)).

As to the third element, the FCA defines "original source" as follows: "[A]n individual who either [(1)] prior to a public disclosure under subsection (e)(4)(A), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C § 3730(e)(4)(B). A relator's information only materially adds to publicly-disclosed allegations if it is "qualitatively different information than what had already been discovered." *United States ex rel. Lockey v. City of Dallas*, 576 F. App'x 431, 437 (5th Cir. 2014).

Time, in its Motion, argues that the first two elements are satisfied. (Dkt. No. 75 at 15–19.) Relator Wibracht's central allegations regarding Time Defendants is that Time Insurance and Schuler conspired with Travelers and Padron to mislead the government into believing the Blackhawk Entities were financially capable of performing the contracts at issue and that the

15

Blackhawk Entities were controlled by their nominal owners. (*See id.* at 15–16.) Time argues that the "trail of fraud" test is satisfied because the government had conducted an investigation into Padron's scheme and initiated criminal proceedings against Padron and others prior to filing the Original Complaint. (*Id.* at 16.) Time contends that the government's charging documents describe the scheme in detail and that the United States subpoenaed Travelers in connection with the above prosecutions on May 22, 2018. (Dkt. No. 75 at 16–18.) Finally, Time argues that even if the Complaint contains non-public information, the allegations are at least partly based upon public disclosures. (Dkt. No. 75 at 18–19 (citing *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 451 (5th Cir. 1995) ("An FCA . . . action *even partly based upon* publicly disclosed allegations or transactions is nonetheless 'based upon' such allegations or transactions." (emphasis supplied))).) Travelers arguments regarding the first two prongs of this test are substantially the same. (*See* Dkt. No. 96 at 9–12.)

Time then argues that the last element is satisfied. (Dkt. No. 75 at 19–20.) Wibracht alleges he disclosed information to the government in July 2020. (*Id.* at 19.) Time admits that this predates the criminal charges, but argues it does not predate the grand jury subpoena issued to Travelers in May 2018. (Dkt. No. 75 at 19.) Thus, Time argues, Wibracht is not an original source. (*Id.*) Additionally, Time argues that Wibracht is not an original source because he concedes that he learned of much of the information through criminal filings. (Dkt. No. 75 at 19–20 (citing Dkt. No. 61, at ¶¶ 23–24, 100).) Travelers' arguments regarding the last prong this test are substantially and substantively the same. (*See* Dkt. No. 76 at 12–14 (citing *Scollick ex rel. United States v. Narula*, No. 1:14-CV-01339-RCL, 2022 WL 3020936 (D.D.C. July 29, 2022)).)

In response to the Time Motion, Relator Wibracht first argues that the first two elements are not satisfied. (Dkt. No. 96 at 16–20.) Relator Wibracht contends this is because the allegations

that Time, Schuler, and Travelers were primary participants in the scheme were not publicly disclosed prior to the complaint, so the government was not on notice of these critical components. (*Id.*) Relator Wibracht points out that Time acknowledges Wibracht's disclosures to the government in 2020 establish that he is an original source, excepting the subpoena to Travelers. (Dkt. No. 96 at 20–21.) However, the subpoena to Travelers does not suggest that Travelers, Time, or Schuler were targets of the criminal investigation. (*Id.* at 21–22.) Relator Wibracht then lists many facts that, he argues, are qualitatively different from the publicly disclosed facts. (*Id.* at 22–24 (citing Dkt. No. 61).) Relator Wibracht's arguments in response to the Travelers Motions are basically the same. (*See* Dkt. No. 97 at 8–14.)

Time, in its reply, again argues that the publicly disclosed facts would have allowed the government to draw the inference of fraud. (Dkt. No. 103 at 8–9.) Time then contends that the facts pointed to by Relator Wibracht in connection with the third element are immaterial or neutral. (*Id.* at 9–11.) Travelers' arguments in reply are substantively similar to the arguments made by Time in its reply in this regard. (*See* Dkt. No. 104 at 4–5 (citing *United States ex rel. Hendrickson v. Bank of Am., N.A.*, 343 F. Supp. 3d 610 (N.D. Tex. 2018), *aff'd*, 779 F. App'x 250 (5th Cir. 2019); quoting *U.S. ex rel. Lockey v. City of Dallas*, 576 F. App'x 431, 437 (5th Cir. 2014)).)

Relator Wibracht, in his sur-reply to the Time Motion, again argues that there is no public disclosure and that, if there were, Relator Wibracht is an original source. (Dkt. No. 112 at 6–9.) Relator Wibracht's sur-reply to the Travelers Motion is substantially and substantively similar. (*See* Dkt. No. 113 at 1–5.)

The Court finds that Wibracht is an original source of any public disclosure. In June of 2020, Wibracht voluntarily disclosed to the Office of the Inspector General information concerning the allegations in the Second Amended Complaint. (Dkt. No. 61 at ¶ 100.) There is no dispute that

Relator Wibracht's disclosure to the government in 2020 predates all public disclosures other than the 2018 subpoena to Travelers. There is also no argument that Relator Wibracht did not disclose all of the material in the Second Amended Complaint. Therefore, the Court finds that Wibracht is an original source of all information other than that contained in the 2018 subpoena. However, Defendants have not shown either that the 2018 subpoena is a public disclosure, or that it contains any information upon which the Second Amended Complaint is based. (*See* Dkt. No. 76-2.) Accordingly, the Court need not reach the question of whether Wibracht's disclosures materially add to the public disclosures.

### D. The Fraudulent Inducement, Presentment, and False Statement Claims Satisfy the Heightened Pleading Standard

Relator Wibracht asserts "fraudulent inducement," "presentment," and "false statement" causes of action against Time, Schuler, and Travelers. (Dkt. No. 75 at 21.)

Time argues that each of these three causes of action rely on the same three elements, though they are styled differently: (1) the defendant submitted, or caused to be submitted, a claim for payment, or a statement or record material to a claim for payment, to the United States government; (2) the claim, record, or statement was false; and (3) the defendant knew the claim, record, or statement was false. (*Id.* (citing 31 U.S.C. §§ 3729(a)(1)(A)–(B)).) Time then argues that Relator Wibracht does not allege that Time or Schuler submitted any bids to the government. (*Id.* at 22.) Further, Time contends, Relator Wibracht does not allege that Time or Schuler caused or prompted Padron or any Blackhawk entities to falsify claims, records or statements. (*Id.* at 22–23.)

Travelers, in its motion, similarly argues that the heightened pleading standards are not met. (Dkt. No. 76 at 14–17.) Travelers then argues that Relator Wibracht has failed to adequately allege the *scienter* necessary to establish a cognizable claim. (*Id.* at 17–19.) Travelers note that

Relator Wibracht relies on a November 20, 2009 email not attached to the Second Amended Complaint to show that Travelers had the requisite *scienter*, and argues that it falls short. (*Id.* at 17–18.) Travelers contends that it is not a participant in the set-aside program and had no duty to investigate or familiarize itself with the rules of the program. (*Id.* at 18 (citing *Scollick,* 2022 WL 3020936 at *13).) Further, Travelers contends, the Second Amended Complaint further fails to allege with sufficient particularity that any Travelers employee had actual knowledge that Padron was improperly exerting control over small businesses in violation of SBA rules. (*Id.* at 19.) Finally, Travelers argues that its underwriting does not show knowledge of the regulations of the set-aside program or Padron's scheme. (*Id.* (citing *Scollick*, 2022 WL 3020936 at *13–14; *Maxum Enters. LLC v. Auto. Fleet Enters., Inc.*, No. 3:18-CV-0687-B, 2019 WL 1493164, at *5 (N.D. Tex. Apr. 4, 2019)).)

In response to the Time Motion, Relator Wibracht argues that he has "alleged with particularity that the Time Defendants knowingly submitted or caused to be submitted false claims for payment, or a false statement or record material to claims for payment, to the United States Government; or Relator[ Wibracht has] alleged particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." (Dkt. No. 96 at 24.) Relator Wibracht then lists out many allegations to support this argument. (*Id.* at 24–28 (citing Dkt. No. 61).)

In response to the Travelers Motion, Relator Wibracht repeats many of the arguments he made in response to the Time Motion. (*See* Dkt. No. 97 at 14–17.) Relator Wibracht then argues that the False Claims Act requires actual knowledge, deliberate ignorance, or recklessness and that it alleged both knowledge and "deliberate enable[ment]" with particularity. (*Id.*at 20–21 (citing Dkt. No. 61, at ¶¶ 4, 5, 20, 23–29, 31–44, 46–50, 54–57).)

Time, in its reply, repeats its argument that Relator Wibracht has not plead facts with sufficient particularity and that Relator Wibracht's allegations are either irrelevant or conclusory. (Dkt. No. 103 at 11–13.)

Travelers, in its reply, repeats its earlier argument that Relator Wibracht has not plead *scienter* with particularity. (Dkt. No. 104 at 6–7.)

Relator Wibracht, in his sur-reply to the Time Motion, again argues that his allegations are sufficiently particularized. (Dkt. No. 112 at 9–10.)

Relator Wibracht, in his sur-reply to the Travelers Motion, repeats his arguments that he has adequately plead *scienter*. (Dkt. No. 113 at 8.)

On careful review of the Second Amended Complaint, the Court finds that Relator Wibracht's allegations meet Rule 9(b)'s heightened standards. (*See* Dkt. No. 61.) Relator Wibracht has alleged direct and indirect presentment with sufficient particularity and has alleged *scienter* with sufficient particularity. (*See* Dkt. No. 61 at ¶¶ at ¶¶ 4, 5, 20, 23–29, 31–44, 46–50, 54–57.) The Court finds that the caselaw cited by Time and Travelers is unpersuasive.

### E.  The Conspiracy Claims Are Adequately Pled

"To establish a cause of action for conspiracy under the FCA, a relator must show: (1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by the government; and (2) at least one act performed in furtherance of that agreement." *U.S. ex rel. Dekort v. Integrated Coast Guard Sys.*, 705 F. Supp. 2d 519, 548 (N.D. Tex. 2010) (citing *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008)). Rule 9(b)'s particularity requirement applies to a conspiracy claim, so the relator must plead with particularity both "an unlawful agreement" among alleged co-conspirators and "overt acts" taken in furtherance of a conspiracy. *Smith v. Sanders*, No. 3:12-CV-4377-M, 2015 WL 5768532, at *5 (N.D. Tex. Sept. 4, 2015) (citing *Grubbs,* 565 F.3d at 193).

Travelers argues that Relator Wibracht fails this test. (Dkt. No. 76 at 20–21.) "First, Relator [Wibracht] alleges that Travelers 'agreed to treat as one entity these legally unrelated entities,' and therefore required cross-indemnification and consolidated financial statements." (*Id.*) Travelers argues this is insufficient because it is not unlawful for a surety to bond companies subject to cross-indemnification. (*Id.*) "Second, Relator [Wibracht] alleges that Travelers was involved in an agreement 'to illegally consolidate . . . businesses under the control of Padron/MAPCO,' and 'conceal that control from the federal government.'" (*Id.*) Travelers argues this allegation is not supported with even one overt act that is "not simply part of providing surety services" or particularities of an unlawful agreement. (*Id.* at 20–21.) Time, in its Motion, makes substantially and substantively the same arguments regarding the conspiracy claim. (*See* Dkt. No. 75 at 23–25.)

In response to the Travelers Motion, Relator Wibracht argues that he did make sufficient allegations. (Dkt. No. 97 at 17–20.) Relator Wibracht also argues that Time and Schuler are agents of Travelers, and that Travelers is therefore responsible for their actions. (*Id.* at 19 (citing *Bartenwerfer v. Buckley*, 143 S.Ct. 665 (2023)).) Relator Wibracht contends that a principal is liable for an agent's fraud though the agent acts solely to benefit himself, if the agent acts with apparent authority. (Dkt. No. 97 at 15 (citing *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566 (1982)).) Relator Wibracht's response to the Time Motion is substantively and substantially similar insofar as it addresses the conspiracy claim. (*See* Dkt. No. 96 at 24–28.)

Travelers, in its reply, argues that *Buckley* provides that principals are not liable when an agent's fraudulent actions exceed the agent's authority. (Dkt. No. 104 at 5 (citing *Bartenwerfer v. Buckley*, 598 U.S. 69, 82 (2023)).) Travlers then argues that *American Society of Mechanical Engineers* is distinguishable because the Second Amended Complaint does not address the scope

of any authority extended to Time by Travelers. (*Id.* at 6 (citing *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982).)

According to Travelers "[t]he purported 'overt acts' by Travelers include treating various companies as one company and requiring consolidated financial statements and cross-indemnification." (*Id.* at 7.) These facts, Travelers urges, do not support an inference of an actual agreement to create a false record or present a false claim. (*Id.*) Travelers then argues that Relator Wibracht does not plead with sufficient specificity. (*Id.* at 7–8.) Time, in the reply its Motion, makes substantially and substantively the same arguments regarding the conspiracy claim. (*See* Dkt. No. 103 at 11–13.)

Relator Wibracht, in sur-reply to the Travelers Motion, argue that he has sufficiently plead agency, and that paragraph 52 of the Second Amended Complaint alleges facts sufficient to show conspiracy. (Dkt. No. 113 at 5–8 (citing Dkt. No. 51 at ¶ 52).) Relator Wibracht's sur-reply to the Time Motion is substantively and substantially similar insofar as it addresses the conspiracy claim. (*See* Dkt. No. 112 at 10.)

The Court finds that Relator Wibracht has satisfied the requirements of Rule 9(b) with respect to the conspiracy claim. Relator Wibracht adequately alleges the existence of an unlawful agreement by alleging specific instances of Time and Travelers working together. (*See e.g.*, Dkt. No. 61 at ¶¶ 29, 32, 48, 50, 52.) Relator Wibracht also adequately alleges overt acts. (Dkt. No. 61 at ¶¶ 24, 32, 36, 48.) Overt acts need not be illegal in and of themselves.

Travelers argues that "[l]ike in *Ramsey-Ledesma*, Relator [Wibracht] 'does not identify any particular person who entered into an agreement on behalf of [Travelers]; nor does it allege particular circumstances that would suggest a meeting of the minds.'" (Dkt. No. 104 at 7 (citing *U.S. ex rel. Ramsey-Ledesma v. Censeo Health, L.L.C.*, No. 3:14-CV-00118-M, 2016 WL 5661644,

at \*11–12 (N.D. Tex. Sept. 30, 2016)).) However, the Second Amended Complaint identifies Nielson of Travelers and Schuler of Time who tacitly agreed to the fraudulent scheme by participating in it and it alleges circumstances that would suggest a meeting of the minds. (*See* Dkt. No. 61 at ¶¶ 29, 32, 48, 50, 52.) Accordingly, Relator Wibracht sufficiently alleges the claim of conspiracy.

Contrary to Travelers' assertions, a principal is liable for the fraud of its agents. *Buckley*, 598 U.S. at 76 ("courts have traditionally held principals liable for the frauds of their agents"). Further, the Court finds that Relator Wibracht has adequately alleged that Time was the agent of Travelers. (*See* Dkt. No. 61 at ¶¶ 7, 16, 28-32, 34, 37, 40.)

### F.   These Claims are Not Inherently Contrary to Public Policy

Travelers argues that it is against public policy to allow a suit to proceed against bond issuers who underwrite high-risk contractors where providing a bond is the only act the underwriter took. (Dkt. No 76 at 27–28.) Travelers contends that allowing such suits increases the risk for underwriters, increasing their prices, and making it harder for small business to obtain bonds. (*Id.* at 28–29.) Federal policy favors bonding, Travelers urges, so allowing suits such as this one to proceed is contrary to federal policy. (*Id.* at 28–30.)

In response, Relator Wibracht argues that public policy favors surety liability where the sureties have knowingly underwritten "sham set-aside contracts." (Dkt. No. 97 at 32–33.)

Travelers and Relator Wibracht do no address this topic in reply and sur-reply, respectively. (*See* Dkt. Nos. 104, 113.)

The Court does not find Travelers' arguments persuasive, as they assume that Travelers has only underwritten a contractor, and nothing more. This is a flawed assumption. At the pleading stage, the pleadings control. As discussed above, Relator Wibracht has alleged that Travelers did much more than simply underwrite a bond—he alleges that Travelers knowingly participated in a

scheme to defraud the federal government where issuing surety bonds was part of the scheme. There is nothing contrary to public policy in this action. (*See* Dkt. No. 61.)

### G. The Claims Against Schuler in His Individual Capacity Should Not Be Dismissed

Time argues that Relator Wibracht's claims against Schuler should be dismissed because Relator Wibracht fails to allege facts sufficient to establish that Schuler, in his individual capacity, committed or conspired to commit any of the alleged violations at issue. (Dkt. No. 75 at 25–26.)

In response, Relator Wibracht contends that the Second Amended Complaint adequately alleges that Schuler was designated as Travelers' attorney-in-fact for the bonds in question, that Schuler was personally involved and personally benefited. (Dkt. No. 96 at 28 (citing Dkt. No. 61 at ¶¶ 6, 24–26, 28, 29, 31–35, 37, 43, 44, 46, 48).) Relator Wibracht then argues that an agent is individually liable for the fraud he knowingly commits, as is his principal. (*Id.* at 29 (citing *In re Primera Energy, LLC*, 579 B.R. 75, 144 (Bank. W.D. Tex. 2017)).) Accordingly, Relator Wibracht argues, Schuler is personally liable. (*Id.*)

The Court is not persuaded by Time's arguments. Schuler is liable for any fraud he knowingly commits. *See In re Primera Energy, LLC*, 579 B.R. 75, 144 (Bank. W.D. Tex. 2017). Further, the Court finds that Relator Wibracht has adequately alleged that Schuler has committed fraud and personally benefited therefrom. (Dkt. No. 61 at ¶¶ 6, 24–26, 28, 29, 31–35, 37, 43, 44, 46, 48.)

### H. Relator Wibracht Does Not Have Independent Standing to Assert the *Qui Tam* Claims in This Action, But Trustee Rodriguez Does

Time argues that "[i]t is well-settled that if a cause of action belongs to the bankruptcy estate, then only the bankruptcy trustee has standing to assert it." (Dkt. No. 75 at 10 (citing *Wieberg v. GTE Swe., Inc.*, 272 F.3d 302, 306 (5th Cir. 2001)).) Time contends that Relator Wibracht does not allege the bankruptcy court ever authorized him to pursue these claims on his own, only that

Trustee Rodriguez has ratified Wibracht's participation in the suit. (*Id.*) Thus, Time argues, "[a]bsent such authorization, only Rodriguez has standing to bring the claims because they belong to the bankruptcy estate." (Dkt. No. 75 at 11 (citing *U.S. ex rel. Gebert v. Transport Admin. Servs.*, 260 F.3d 909, 913 (8th Cir. 2001), *U.S. ex rel. Bibby v. Wells Fargo Bank, N.A.*, 906 F. Supp. 2d 1288, 1305 (N.D. Ga. 2012)).)

Travelers argues that "[b]y operation of the Bankruptcy Code (11 U.S.C. 101, *et seq.*) and applicable law, the bankruptcy trustee – not Steven Wibracht – has *exclusive standing to pursue* the pending FCA claims on behalf of the government." (Dkt. No. 76 at 21 (citing *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 361-64 (5th Cir. 2014)) (emphasis in original).) According to Travelers, Trustee Rodriguez represented to the Bankruptcy court that he is the real party in interest. (*Id.* at 21–22.) Further, Travelers contends that Wibracht only has an expectancy interest in any surplus, but this does not create standing. (*Id.* at 22 (citing *In re Merrill Lynch & Co., Inc. Rsch. Rep.'s Sec. Litig.*, 375 B.R. 719, 725-26 (S.D.N.Y. 2007), *In re Griffin*, 330 B.R. 737, 740 (W.D. Ark. 2005)).)

In Realtors' response to the Time Motion, Wibracht argues that "the U.S. confers standing on relators to bring *qui tam* actions under the FCA." (Dkt. No. 96 at 10 (citing *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 120 S. Ct. 1858, 1863 (2000)).) Wibracht also argues that he has "prudential standing" because of his ownership of a "large potential surplus" over the debts with Trustee Rodriguez must administer. (*Id.*) "In Bankruptcy Court, debtors generally lack standing to object to the trustee's administration of the estate, *except where a surplus is in prospect.*" (*Id.* (citing *In re Davidson*, 596, B.R. 841, 846 (Bankr. N.D. Miss. 2019); *In re Coleman*, 131 B. R. 59, 60 (Bankr. N. D. Tex. 1991)) (emphasis in original).) Relator Wibracht then asserts the following: "To deny Wibracht standing is to deprive him of a substantial property interest, in violation of the due process clause of the Fifth Amendment and imposes an excessive

fine in violation of the Eighth Amendment to the Constitution." (*Id.* at 10–11 (citing *Tyler v. Hennepin County, Minnesota*, 143 S. Ct. 1369, 1380-81, (May 25, 2023)).)

Relator Wibracht then argues that *Bibby*, a case cited by Time, supports his position, not Time's. (*Id.* at 11 (citing *Bibby*, 906 F. Supp. 2d 1288).) Finally, Relator Wibracht argues that depriving him of standing would be to "impact major claims that belong not to Wibracht but to the Government." (*Id.* at 12.) Relator Wibracht's response to the Travelers Motion in this regard is substantively and substantially the same as their response to the Time Motion, except that they argue that cases cited by Travelers are distinguishable. (*See* Dkt. No. 97 at 21–24 (citing *Wieburg v. GTE SW.,* 272 F.3d 302 (5th Cir. 2001), *United States ex rel. Spicer v. Westbrook,* 751 F.3d 354 (5th Cir. 2014), *In re Merrill Lynch Co., Inc. Research Reports,* 375 B.R. 719 (S.D. N.Y. 2007)).)

Time, in its reply, argues that even though relators have standing to bring *qui tam* actions generally speaking, once a relator files for bankruptcy any *qui tam* claims it has, as well as any damages recovered under those claims, belong to the bankruptcy estate. (Dkt. No. 103 at 5 (citing *U.S. ex rel. Gebert v. Transport. Admin. Servs.*, 260 F.3d 909, 914 (8th Cir. 2001)).) Time also contends that there would be no prejudice to the United States because (1) it has declined to intervene and (2) it can intervene at any time "upon a showing of good cause." (*Id.* at 6 (citing 31 U.S.C. § 3730(c)(3)).) Last, Time argues that *Bibby* supports its position, not Relator Wibracht's. (*Id.* at 6–7 (citing *U.S. ex rel. Bibby v. Wells Fargo Bank, N.A.*, 906 F. Supp. 1288, 1305 (N.D. Ga. 2012)).)

Travelers, in its reply, argues that Wibracht conflates two types of standing: "(1) standing to pursue a claim that belongs to the bankruptcy estate; and (2) a chapter 7 debtor's standing in a *bankruptcy case* to participate in proceedings before the *bankruptcy court*." (Dkt. No. 104 at 8 (emphasis in original).) Travelers asserts that Wibracht has an expectancy interest in any proceeds,

26

but this only gives him standing to object to the Trustee's administration of the proceeds, not standing to prosecute the claims in this court. (*Id.* at 8–9 (citing *In re Cyrus II P'ship*, 585 B.R. 311, 315-16 (Bankr. S.D. Tex. 2007)).)

In its sur-reply to the Time Motion, Relator Wibracht argues that the cases cited by Time in its reply brief are distinguishable, or support his position. (Dkt. No. 112 at 4–6 (citing U.*S. ex rel. Gebert v. Transport Admin. Services*, 260 F.3d 909, 914 (8th Cir. 2001), *U.S. ex rel. Bibby v. Wells Fargo Bank, N.A.,* 906 F. Supp. 2d 1288, 1305 (N.D. Ga. 2012).) Relator Wibracht also argues, for the first time, that *In re Bailey* supports his position. (Dkt. No. 112 at 5–6 (citing *In re Bailey,* 306 B.R. 391, 392 (Bankr. D.D.C. 2004)).) In its sur-reply to the Travelers Motion, Relator Wibracht makes substantially the same arguments in this regard as he made in sur-reply to the Time Motion. (*See* Dkt. No. 113 at 8–9.)

The Court finds that Trustee Rodriguez has exclusive standing to pursue these claims. "In the bankruptcy context, the bankruptcy trustee is the real party in interest with respect to claims falling within the bankruptcy estate. The bankruptcy trustee therefore has exclusive standing to assert undisclosed claims that fall within the bankruptcy estate." *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 362 (5th Cir. 2014) (citations omitted). The bankruptcy case was re-opened and this action was listed as an asset in a schedule. Trustee Rodriguez has exclusive standing. (*See* Dkt. Nos. 76-9, 76-10.)

Relator Wibracht's arguments to the contrary do not rebut this point. A debtor may object to a trustee's administration of an estate where a surplus exists, but this does not create standing to sue in place of the trustee. *See In re Davidson*, 596, B.R. 841, 846 (Bankr. N.D. Miss. 2019); *In re Coleman*, 131 B. R. 59, 60 (Bankr. N. D. Tex. 1991).

Relator Wibracht cites no caselaw remotely demonstrating that "depriv[ing] him" of standing would violate the Fifth or the Eighth Amendment. (*See* Dkt. No. 96 at 10–11; Dkt. No. 97 at 21–22.) The only case cited by Relator Wibracht in this regard, *Tyler v. Hennepin County*, holds that a plaintiff's debts do not vitiate a "pocketbook injury" for standing purposes. 598 U.S. 631, 636–37. *Tyler* does not hold that failure to confer standing would constitute violation of the Fifth or Eighth Amendment.

Contrary to Relator Wibracht's assertions, the United States would not be injured if the claim were dismissed because it has already had the opportunity to intervene. (*See* Dkt. No. 31.) Further, injury to the United States from dismissal does not allow the Court to ignore standing jurisprudence.

However, the present case should not be dismissed solely because Relator Wibracht lacks standing. Trustee Rodriguez is a named party. This action is brought by Relator "Steven Brice Wibracht Individually ***and***/or through ***Jose C. Rodriguez as Trustee*** of the Bankruptcy Estate of Steven Brice Wibracht and Erin Wibracht and the United States, ex. rel." Thus, even though Relator Wibracht should be dismissed as a party, the case as a whole should not be dismissed.

In light of this, the Court finds that the present style of this case— Steven Brice Wibracht Individually and/or through Jose C. Rodriguez as Trustee of the Bankruptcy Estate of Steven Brice Wibracht and Erin Wibracht—does not align with the fact that Trustee Jose C. Rodriguez is and should be the sole relator prosecuting this case. Rule 17(a) states that "[a]n action must be prosecuted in the name of the real party in interest," but the Court may not dismiss an action for failure to comply with this requirement "until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." FED. R. CIV. P. 17(a). Accordingly, the Court **ORDERS** that Trustee Jose C. Rodriguez alone be recognized and

substituted as the sole relator such that the style of this case be hereafter: Jose C. Rodriguez as Trustee of the Bankruptcy Estate of Steven Brice Wibracht and Erin Michelle Wibracht and the United States, ex. rel.," and that this case henceforth be prosecuted, where the United States has not intervened, in the name of the real party in interest, Trustee Rodriguez.

## V.    CONCLUSION

For the foregoing reasons, the Court finds that the Time Motion (Dkt. No. 75) and the Travelers Motion (Dkt. No. 76) should both be **GRANTED-IN-PART** and **DENIED-IN-PART**. Further, the Court **ORDERS** that the style of this case (as to all matters where the United States has not intervened) be reformed to be: Jose C. Rodriguez as Trustee of the Bankruptcy Estate of Steven Brice Wibracht and Erin Michelle Wibracht and the United States, ex. rel.," and any reference to Steven Brice Wibracht individually as a relator herein be discontinued.

**So ORDERED and SIGNED this 26th day of April, 2024.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE